#25739-a-GAS

**2011 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

VERA MARTIN,                                Appellant,

  v.

AMERICAN COLLOID COMPANY
and AMERICAN INSURANCE
COMPANY,                              Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MARK BARNETT
Judge

* * * *

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota                       Attorneys for appellant.


SHILOH M. MACNALLY
DANIEL E. ASHMORE of
Gunderson, Palmer, Nelson
  and Ashmore, LLP
Rapid City, South Dakota                       Attorneys for appellees.

* * * *

ARGUED APRIL 27, 2011

OPINION FILED **09/14/11**

SEVERSON, Justice

[¶1.] Vera Martin lives in Belle Fourche, South Dakota, but worked at an American Colloid Company plant in Colony, Wyoming. After suffering a work-related injury at the Colony plant, Martin received Wyoming workers' compensation benefits. She then filed a claim for South Dakota workers' compensation benefits. The South Dakota Department of Labor dismissed her claim for lack of jurisdiction, and the circuit court affirmed. We affirm.

## Background

[¶2.] American Colloid is a Delaware corporation that conducts business in several states including Wyoming, South Dakota, Montana, North Dakota, Alabama, and Nevada. American Colloid's corporate headquarters is located in Hoffman Estates, Illinois. Primary management functions, including human resources, payroll, manufacturing, marketing, and information technology, are based in Illinois.

[¶3.] American Colloid operates a large manufacturing plant in Colony, Wyoming, for the production of bentonite and lignite products. The Colony plant operates with separate plant management on site. Plant management in Wyoming handles customer service, accounts payable, orders, and receiving. The plant also has a separate cost center at the Wyoming plant, which tracks the plant's revenue, expenses, and profit. Plant management in Wyoming interviews, hires, and fires employees. Although the corporate headquarters in Illinois issues paychecks to employees, plant management in Wyoming determines wages and verifies hours worked. American Colloid also operates a business office in Belle Fourche, South

Dakota, which provides limited administrative assistance to plant management in Wyoming.

[¶4.]     Martin applied for employment with American Colloid in early 2006. She submitted her application to the Belle Fourche office.  In February 2006, four plant supervisors interviewed Martin at the Colony plant.  She was subsequently hired as a line worker at the Colony plant.  Before her formal hiring, plant management required Martin to complete a physical and urinalysis at a Belle Fourche clinic in South Dakota.  Martin exclusively worked at the Colony plant in Wyoming until she was terminated in February 2008.

[¶5.]     Martin sustained a work-related injury at the Colony plant in September 2006.  The plant reported her injury to the Wyoming Workers' Safety & Compensation Division (WWSCD).  Shortly after her injury, Martin signed a Wyoming Report of Injury and received a pamphlet that explained her Wyoming workers' compensation benefits.  In an attempt to accommodate her light-duty restrictions, plant management allowed Martin to work in the lab at the plant. But plant management eventually terminated Martin because they could not provide her a permanent light-duty position in either Colony or Belle Fourche.

[¶6.]     American Colloid paid workers' compensation premiums in Wyoming for Martin.  Wyoming has a state-funded workers' compensation system, and each quarter the employer must provide the WWSCD a list of employees and wages paid to those employees.  The list that American Colloid provided to the WWSCD included Martin's name and gross earnings.  Martin received Wyoming workers'

compensation benefits totaling approximately $38,000. She later received a five-percent permanent partial impairment rating.

[¶7.] In February 2008, Martin filed a petition for hearing with the South Dakota Department of Labor. She alleged that her present physical condition prevented her return to her former employment and that she was entitled to odd-lot disability benefits. American Colloid moved to dismiss her claim for lack of jurisdiction. Martin resisted the motion, arguing that the Department had jurisdiction because she resides in South Dakota. In January 2010, the Department dismissed Martin's claim for South Dakota workers' compensation benefits for lack of jurisdiction. Martin appealed to circuit court, which affirmed the Department's decision. Martin appeals.

**Standard of Review**

[¶8.] SDCL 1-26-37 establishes the standard of review for administrative appeals. Under the statute, "the applicable standard of review 'will vary depending on whether the issue is one of fact or one of law.'" *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366 (quoting *Orth v. Stoebner & Permann Constr., Inc.*, 2006 S.D. 99, ¶ 27, 724 N.W.2d 586, 592). "The actions of the agency are judged by the clearly erroneous standard when the issue is a question of fact." *Id.* (citing *Orth*, 2006 S.D. ¶ 27, 724 N.W.2d at 592). Because an issue regarding jurisdiction is a question of law, we review the Department's decision to dismiss Martin's claim for South Dakota workers' compensation benefits de novo. *See O'Toole v. Bd. of Tr. of S.D. Retirement Sys.*, 2002 S.D. 77, ¶

9, 648 N.W.2d 342, 345 (citing *In re Estate of Galada,* 1999 S.D. 21, ¶ 8, 589 N.W.2d 221, 222).

## Analysis and Decision

[¶9.]      Martin has already received Wyoming workers' compensation benefits.  She now seeks an award of benefits in South Dakota as well.  Under the unique system of workers' compensation law, these "successive awards" are sometimes permitted.  In holding that successive awards do not violate the Full Faith and Credit Clause of the United States Constitution, the United States Supreme Court has stated:

> We therefore would hold that a State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its work[ers'] compensation law in the first instance.  The Full Faith and Credit Clause should not be construed to preclude successive work[ers'] compensation awards.

*Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 286, 100 S. Ct. 2647, 2663, 65 L. Ed. 2d 757 (1980).  *See* U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").  Thus, Martin's successive award of workers' compensation benefits would be permissible under constitutional due process analysis if South Dakota has the power to apply its workers' compensation law in the first instance.  *See id.*

[¶10.]      In this administrative appeal, there is some confusion as to the use of the term "jurisdiction."  "'Jurisdiction' in regard to administrative agencies generally may be defined as power given by law to hear and decide controversies."

- 4 -

2 Am. Jur. 2d, Administrative Law § 274 (1994). This Court has described the

jurisdiction of administrative agencies as follows:

> In administrative law the term jurisdiction has three aspects: (1)
> personal jurisdiction, referring to the agency's authority over the
> parties and intervenors involved in the proceedings; (2) subject
> matter jurisdiction, referring to the agency's power to hear and
> determine the causes of a general class of cases to which a
> particular case belongs; and (3) the agency's scope of authority
> under statute.

*O'Toole*, 2002 S.D. 77, ¶ 10, 648 N.W.2d at 345 (quoting 2 Am. Jur. 2d

Administrative Law § 274 (1994)). This jurisdiction issue involves the scope of the

Department's authority under South Dakota statutes. In order to determine

whether Martin was entitled to South Dakota benefits for this out-of-state injury in

the first instance, we must look to the South Dakota statutes governing workers'

compensation.

[¶11.]     The Department and the circuit court both concluded that the

Department lacked jurisdiction to hear this case, but used very different methods

to reach this conclusion. While the Department applied a three-part test, the

circuit court undertook an extensive examination of South Dakota's workers'

compensation statutes. The Department followed the precedent of two prior

Department decisions, which adopted a three-part test to determine jurisdiction

under South Dakota workers' compensation law.[1] *Meyers v. A.R.A. Trailblazers,*

---

1.     Although both parties refer to the test that the Department applied as
       "Professor Larson's test," we find this term to be inaccurate. Professor
       Larson's treatise does not explicitly lay out a three-part test to be used in
       determining jurisdiction. Rather, it explains:
       > Recommendation No. 2.11 of the [1972 National Commission on
       > State Workmen's Compensation Laws] was that an employee or
       >                                              (continued . . .)

*Inc.*, HF No. 93, 1988/89, 1990 WL 506839, at \*2 (S.D. Dep't of Lab. April 18, 1990) (quoting 4 Larson, *Workman's Compensation Law*, § 87.00 (1990)); *Kruse v. Mercer Transp.*, HF No. 393, 1993/94, 1995 WL 798372, at \*2 (S.D. Dep't of Lab. Dec. 6, 1995). According to the Department's test, the Department has jurisdiction "if the place of injury, or the place of hiring, or the place of employment relation is within the state." *Meyers*, 1990 WL 506839, at \*2 (quoting 4 Larson, *Workman's Compensation Law,* § 87.00 (1990)).

[¶12.]  This Court has held that "'proceedings under the Work[ers'] Compensation Law . . . are purely statutory, and the rights of the parties and the manner of procedure under the law must be determined by its provisions.'" *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 364 (S.D. 1992) (quoting *Chittenden v. Jarvis*, 68 S.D. 5, 8, 297 N.W. 787, 788 (1941)). The controlling issue in this case is whether Martin's employment with American Colloid is within the jurisdiction of the Department based on the agency's scope of authority under

---

(. . . continued)

> his or her survivor be given the choice of filing a workers' compensation claim in the state where the injury or death occurred, or where the employment was principally localized, or where the employee was hired. Virtually all states are now in compliance with this recommendation.

9 Lex K. Larson, *Larson's Workers' Compensation Law* § 143.01 (Matthew Bender, Rev. Ed.). Thus, the test that the Department applied was actually based on a recommendation of the National Commission on State Workmen's Compensation Laws. It was not a unique creation of Professor Larson's. It is important to note, however, that South Dakota has not followed the Commission's advice by adopting the recommended statutes that deal with this issue. For purposes of simplicity, we will refer to this test as "the Department's test."

statute. Thus, we must look to the South Dakota's workers' compensation statutes to determine the scope of the Department's authority. The Department's test may be followed by a majority of states, but most have adopted it by statute.

[¶13.]       The circuit court was correct in its initial approach of looking to South Dakota's workers' compensation statutes to determine the Department's jurisdiction. But we disagree with its conclusion that Title 62, which governs workers' compensation in South Dakota, provides a clear answer to the jurisdictional question in this case. The circuit court applied SDCL 62-3-3 and the statutes referenced therein, and concluded that, because American Colloid did not carry workers' compensation insurance for Martin in South Dakota, it was not subject to the South Dakota workers' compensation statutes. We disagree with this interpretation. An employer does not escape the provisions of Title 62 by choosing not to obtain workers' compensation insurance for its employees. Rather, by doing so, it forfeits the protections of limited liability that Title 62 provides, and is subject to an action at law and potentially to double damages. SDCL 62-3-11. The uninsured employee "may elect to proceed against the employer in any action at law to recover damages for personal injury or death; or may elect to proceed against the employer in circuit court under the provisions of [Title 62], as if the employer had [been insured]." *Id*. Therefore, even if American Colloid did not have South Dakota workers' compensation insurance for Martin, it may still be subject to the provisions of Title 62.

[¶14.]       SDCL 62-3-3 provides:

> Every employer and employee shall be presumed to have
> accepted the provisions of this title, and shall be thereby bound,

> *whether injury or death resulting from such injury occurs*
> *within this state or elsewhere*, except as provided by §§ 62-3-4 to
> 62-3-5.1, inclusive.

This statute suggests that the Legislature intended Title 62 to apply to at least some injuries that occur in another state, but the Title offers little further guidance on the scope of the Department's authority. Thus, while many other states have addressed this issue by statute, we are left to use statutory interpretation. When determining the presence or absence of coverage for injuries occurring out of state, of primary importance is a determination as to the location of the employment relationship. *See Nashko v. Standard Water Proofing Co.*, 149 N.E.2d 859, 861 (N.Y. Ct. App. 1958). This is "an approach whereby certain factors tending to show substantial connection with this [s]tate are looked for in the factual patterns of each individual case."[2] *Id.*

[¶15.]     The Restatement (Second) of Conflict of Laws (1971) is helpful in determining what constitutes a substantial connection with the employment relationship. Section 181 provides:

> A State of the United States may consistently with the
> requirements of due process award relief to a person under its
> work[ers'] compensation statute, if
>     (a) the person is injured in the State, or
>     (b) the employment is principally located in the State, or

---

2.     While this approach is similar to the "most significant relationship" test used in conflict of laws cases, it is not identical. *See Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 67 (S.D. 1992). It is conceivable that both South Dakota and another state could have a substantial connection to the employment relationship, and both could therefore be considered the location of the employment relationship. In such a case, the Department would have jurisdiction even if the other state had awarded benefits under its workers' compensation laws.

(c) the employer supervised the employee's activities from a place of business in the State, or
(d) the State is that of most significant relationship to the contract of employment with respect to the issue of work[ers'] compensation under the rules of §§ 187-188 and 196, or
(e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the work[ers'] compensation act of the State, or
(f) the State has some other reasonable relationship to the occurrence, the parties and the employment.

Despite the Restatement's use of the term "or" after each subsection, we do not suggest that any one of these factors is necessarily sufficient on its own to create a substantial connection to the employment relationship. Whereas the Restatement provides a broad overview of what is constitutionally permissible, our task is to determine the scope of the Department's authority under South Dakota law. This determination must be made on a case-by-case basis, by evaluating all of the factors surrounding the employment relationship. Still, the factors outlined in the Restatement remain a useful reference for making this determination.[3]

---

3. Professor Larson's treatise provides a similar list of factors:
There are six grounds on which the applicability of a particular compensation act has been asserted; they are that the local state is the
(1) Place where the injury occurred;
(2) Place of making the contract;
(3) Place where the employment relation exists or is carried out;
(4) Place where the industry is localized;
(5) Place where the employee resides; or
(6) Place whose statute the parties expressly adopted by contract.
Larson, *supra* § 142.01.

[¶16.]     The only connection between South Dakota and the employment relationship at issue in this case is that Martin was a South Dakota resident throughout her employment with American Colloid. While this factor does, to some extent, strengthen the connection between South Dakota and the employment relationship, it is not alone sufficient to create the substantial connection necessary to conclude that South Dakota is the place of the employment relationship. Comment a. to the Restatement states, "No case is known . . . where the State of an employee's domicile, which had no other relationship to the parties or to the employment, has awarded the employee relief under its work[ers'[ compensation statute." *Id*. Other courts have found jurisdiction based on the state of the employee's residence, but generally together with other connections between the state and the employment relationship. *See Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028 (1947) (In addition to being a resident of the District of Columbia, employee was hired in the District and worked there for approximately six years, and employer was also based in the District); *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S. Ct. 208, 88 L. Ed. 149 (1943) (Although injury occurred in Texas, employee was resident of Louisiana and was primarily employed in Louisiana); *Alaska Packers Ass'n. v. Indus. Acc. Com'n*, 294 U.S. 532, 55 S. Ct. 518, 79 L. Ed. 1044 (1935) (Employee was resident of California and contract of employment was made in California). None of those other connections are present in this case. Martin was hired in Wyoming, worked exclusively in Wyoming, and was injured in Wyoming. There is no connection to South Dakota aside from Martin's residence. Therefore, we conclude that South Dakota is not

#25739

the place of the employment relationship and that the Department does not have jurisdiction over this matter.

[¶17.] Affirmed.

[¶18.] KONENKAMP and ZINTER, Justices, concur, MEIERHENRY and MILLER, Retired Justices, concur.

[¶19.] MILLER, Retired Justice, sitting for GILBERTSON, Chief Justice, disqualified.

[¶20.] WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.