#26270-a-GAS

**2012 S.D. 82**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SHARON KNAPP, surviving spouse
of ERWIN "DON" KNAPP, deceased,               Appellant,

    v.

HAMM & PHILLIPS SERVICE
COMPANY, INC. and LIBERTY
MUTUAL INSURANCE CO.,               Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
HARDING COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN W. BASTIAN
Judge

* * * *

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota               Attorneys for appellant.

TIMOTHY M. GEBHART
RICK W. ORR of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota               Attorneys for appellee.

* * * *

ARGUED AUGUST 29, 2012

OPINION FILED **11/28/12**

#26270

SEVERSON, Justice

[¶1.]            Erwin "Don" Knapp was injured on a job site while working in North Dakota for the North Dakota office of Hamm & Phillips Service Company.  Knapp filed for and received benefits through North Dakota's workers' compensation agency, but after about nine months of benefits, he received a benefit denial notification from the agency.  Knapp then filed a claim for workers' compensation benefits in South Dakota.  While awaiting adjudication of that claim, Knapp died of causes unrelated to his injury.  His wife, Sharon Knapp, sought to substitute herself as a party in the South Dakota claim.  The South Dakota Department of Labor granted Sharon's motion to substitute, but dismissed the claim for lack of statutory jurisdiction.  The circuit court reversed the motion to substitute Sharon and affirmed the dismissal for lack of statutory jurisdiction.  Sharon appeals both issues.  We affirm the circuit court's dismissal for lack of statutory jurisdiction because South Dakota is not the location of the employment relationship.   We do not reach the issue of substitution.

## BACKGROUND

[¶2.]            From April 2005 to June 2008, Erwin "Don" Knapp worked for a construction company and lived in Baker, Montana.  Though he worked in Montana, Knapp owned a home in Camp Crook, South Dakota, and lived there off and on since 1976.  In May 2008, Knapp applied for a job as a truck driver at the Marmarth, North Dakota, office of Hamm & Phillips Service Company, Inc.  Knapp applied for this position because he wanted to live in his Camp Crook home, rather than in Montana.  Hamm & Phillips hired Knapp and assigned him to duties

- 1 -

driving a truck and hauling waste water from oil wells in southwestern North Dakota, northwestern South Dakota, and southeastern Montana.

[¶3.] On June 26, 2008, Knapp began working for Hamm & Phillips in Marmarth, North Dakota. He spent his first five days in Marmarth, completing training and orientation for his new job. Knapp worked from Marmarth for the next nine days. Beginning on July 18, he began parking and picking up his Hamm & Phillips truck in Buffalo, South Dakota, at a facility owned by Continental Resources, Inc., a customer of Hamm & Phillips. Continental allowed several Hamm & Phillips drivers to park their trucks at Continental's facility in Buffalo. When Knapp worked from Buffalo, he dropped off his daily time logs and picked up his paychecks at Continental's facility. However, Knapp's time logs and paychecks were only picked up from and delivered to Buffalo if Knapp was working from Buffalo.

[¶4.] Prior to his injury, Knapp started his work day in Buffalo on 39 out of 63 days. He started his work day in Marmarth on 24 out of 63 days. Relying on the daily driver logs, which detailed where Knapp traveled throughout the day, Knapp spent approximately 60 percent of his time in North Dakota and about 35 percent of his time in South Dakota.

[¶5.] On September 30, 2008, Knapp was working at an oil well site in North Dakota. He tripped and fell backwards over a box of pipes. Knapp went to the emergency room and doctors diagnosed him as suffering from a scalp contusion/hematoma, concussion, contusion to his lower back, and sprain/strain to his cervical spine as a result of the fall. Hamm & Phillips reported the injury to

North Dakota Workforce Safety and Insurance (WSI) on October 8, 2008, and on November 3, 2008, WSI accepted the claim and awarded $689 per week in medical and disability benefits for Knapp's injuries. Knapp received care for his injuries in Bowman, North Dakota, and in Spearfish and Rapid City, South Dakota.

[¶6.] On September 1, 2009, WSI issued a Notice of Decision Denying Further Liability for Knapp's claimed head injuries and post-concussive syndrome after August 10, 2009. WSI based their decision on a neuropsychological examination conducted by Dr. Scott Cherry. In his report of the examination, Dr. Cherry stated that Knapp did not suffer from a traumatic brain injury nor demonstrate residual symptoms of a traumatic brain injury. Dr. Cherry's examination report was reviewed by a WSI medical consultant, who confirmed Dr. Cherry's findings. WSI then forwarded the examination report and WSI review to Dr. Jason Knudson, Knapp's treating physician. Dr. Knudson said that he did not have any objective medical data to contradict Dr. Cherry's examination report or the WSI review. Further, Dr. Knudson said that Knapp's "current disabling factor seems to be his inability to concentrate or focus and his emotional ability and certainly his depression, which is pre-existing, plays a role."

[¶7.] On September 16, 2009, Knapp requested a reconsideration of WSI's benefit denial. WSI staff reviewed and upheld their benefit denial on November 10, 2009. At the time that the benefit denial was reviewed and upheld, WSI told Knapp that he had 30 days to request assistance from WSI's Decision Review Office. On October 27, 2009, Knapp's attorney contacted WSI and informed them that Knapp would file a workers' compensation claim in South Dakota.

[¶8.]     On December 7, 2009, Knapp filed a Petition for Hearing with the South Dakota Department of Labor.  One week later, Knapp requested assistance from the North Dakota WSI Decision Review Office.  On January 13, 2010, WSI sent Knapp a Notice of Decision Suspending Benefits effective February 3, 2010, pending the resolution of Knapp's South Dakota workers' compensation claim.  WSI's January 13 Notice also advised Knapp that if South Dakota accepted his claim, he would be required to repay all of the benefits paid out by North Dakota.  The WSI Decision Review Office sent Knapp a Certificate of Completion on February 2, 2010, which instructed Knapp to request a hearing within 30 days of the mailing of the certificate if he wished to dispute the decision.  The WSI certificate also stated that without a request for hearing, the certificate became final and "entitled to the same faith and credit as a judgment of a court of record," under N.D. Cent. Code §§ 65-01-16(7) and 65-05-03 (2011).

[¶9.]     In May 2010, Hamm & Phillips filed a motion for summary judgment. It argued that the South Dakota Department of Labor lacked jurisdiction, and if jurisdiction was found, Knapp's claim was barred by res judicata.

[¶10.]     Knapp died in March 2011 due to causes unrelated to his work injury. Knapp's wife, Sharon, filed a motion to substitute herself as a party based on SDCL 15-4-1.  On May 4, 2011, the Department granted Sharon's motion for substitution and granted Hamm & Phillips' motion for summary judgment on jurisdiction, dismissing the case.  Sharon appealed to the circuit court, which reversed the Department's decision on substitution and affirmed the Department's decision on the motion for summary judgment.  Sharon appeals.

## STANDARD OF REVIEW

[¶11.]     SDCL 1-26-37 establishes the standard of review used in administrative appeals.  According to the statute, the applicable standard of review varies "'depending on whether the issue is one of fact or one of law.'"  *Martin v. Am. Colloid Co.*, 2011 S.D. 57, ¶ 8, 804 N.W.2d 65, 67 (quoting *Darling v. W. River Masonry, Inc.*, 2010 S.D. 4, ¶ 10, 777 N.W.2d 363, 366).  "[A]ctions of the agency are judged by the clearly erroneous standard when the issue is a question of fact."  *Id.* (citing *Darling*, 2010 S.D. 4, ¶ 10, 777 N.W.2d at 366).  "[A]ctions of the agency are fully reviewable when the issue is a question of law."  *Darling*, 2010 S.D. 4, ¶ 10, 777 N.W.2d at 366 (citing *Orth v. Stoebner & Permann Constr., Inc.*, 2006 S.D. 99, ¶ 27, 724 N.W.2d 586, 592).  Jurisdictional issues are questions of law and are reviewed de novo.  *Martin*, 2011 S.D. 57, ¶ 8, 804 N.W.2d at 67.  *See O'Toole v. Bd. of Trs. of S.D. Ret. Sys.*, 2002 S.D. 77, ¶ 9, 648 N.W.2d 342, 345.  Finally, "[w]e review statutory questions de novo, as they are questions of law."  *Fredekind v. Trimac Ltd.*, 1997 S.D. 79, ¶ 4, 566 N.W.2d 148, 150 (citing *Permann v. Dept. of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113, 117 (S.D. 1987)).

## DISCUSSION

[¶12.]     An administrative agency has jurisdiction over a matter when the agency is given power "'by law to hear and decide controversies.'"  *Martin*, 2011 S.D. 57, ¶ 10, 804 N.W.2d at 67 (quoting 2 Am. Jur. 2d, *Administrative Law* § 274 (1994)).  Jurisdiction in administrative law differs from jurisdiction in a traditional court setting.  It has three components:

> (1) personal jurisdiction, referring to the agency's authority over the parties and intervenors involved in the proceedings; (2)

> subject matter jurisdiction, referring to the agency's power to hear and determine the causes of a general class of cases to which a particular case belongs; and (3) the agency's scope of authority under statute.

*Id.*, ¶ 10, 804 N.W.2d at 67-68 (quoting *O'Toole*, 2002 S.D. 77, ¶ 10, 648 N.W.2d at 345, and 2 Am. Jur. 2d, *Administrative Law* § 274 (1994)). As in *Martin v. Am. Colloid Co.*, the jurisdiction issue here involves the scope of the Department's authority under South Dakota statutes. 2011 S.D. 57, ¶ 12, 804 N.W.2d at 68. The Full Faith and Credit Clause of the United States Constitution is not determinative. *See Thomas v. Wash. Gas Light Co.*, 448 U.S. 261, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980) (determining that the Full Faith and Credit Clause may not be "construed to preclude successive work[ers'] compensation awards.").\* *See also* U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."). As a threshold issue, we must look to South Dakota's workers' compensation statutes to determine if, under the scope of the Department's authority, Knapp was eligible for benefits for his out-of-state injury.

---

\* Under *Thomas*, "the factfindings of state administrative tribunals are entitled to the same res judicata effect in the second State as findings by a court." 448 U.S. at 281, 100 S. Ct. at 2661. "But the critical differences between a court of general jurisdiction and an administrative agency with limited statutory authority forecloses the conclusion that constitutional rules applicable to court judgments are necessarily applicable to work[ers'] compensation awards." *Id.* at 281-82, 100 S. Ct. at 2661. In this case, we do not reach the res judicata effect of any factual findings of the North Dakota WSI on the South Dakota Department of Labor.

[¶13.] South Dakota's workers' compensation scheme is set out in Title 62 of the South Dakota Codified Laws. SDCL 62-3-3 describes who is bound by the provisions of Title 62. It provides:

> Every employer and employee shall be presumed to have accepted the provisions of this title, and shall be thereby bound, whether injury or death resulting from such injury occurs within this state or elsewhere, except as provided by §§ 62-3-4 to 62-3-5.1, inclusive.

SDCL 62-3-3. In *Martin*, we stated that this statute "suggests that the Legislature intended Title 62 to apply to at least some injuries" occurring out of state, but the statute does not define the scope. 2011 S.D. 57, ¶ 14, 804 N.W.2d at 69. South Dakota's workers' compensation laws do not contain an explicit definition and "the Title offers little further guidance on the scope of the Department's authority." *Id.*

[¶14.] Without additional guidance in the statute, we use statutory interpretation to determine the scope of the statute. In *Martin*, we focused on the location of the employment relationship to determine if South Dakota workers' compensation law covered the injury. 2011 S.D. 57, ¶ 14, 804 N.W.2d at 69. We look for factors that tend to show a "'substantial connection'" with South Dakota on a case-by-case basis to determine the location of the employment relationship. *Martin*, 2011 S.D. 57, ¶ 14, 804 N.W.2d at 69 (quoting *Nashko v. Standard Water Proofing Co.*, 149 N.E.2d 859, 861 (N.Y. 1958)). Through *Martin*, referencing *Nashko*, we developed "'an approach whereby certain factors tending to show substantial connection with this state are looked for in the factual patterns of each individual case.'" *Id.* (quoting *Nashko*, 149 N.E.2d at 861). If sufficient significant contacts with South Dakota appear so that it can reasonably be said that the

employment is located here, then the Department has statutory jurisdiction. If the circumstances and elements of the employment indicate that the employment is in fact located in another state then the claimant is not protected by South Dakota's Title 62. Though any one factor is not dispositive, we consider factors such as those listed in the Restatement (Second) of Conflict of Laws § 181 (1971) in evaluating whether South Dakota is the location of the employment relationship. Section 181 provides:

> A State of the United States may consistently with the requirements of due process award relief to a person under its workers' compensation statute, if
> (a) the person is injured in the State, or
> (b) the employment is principally located in the State, or
> (c) the employer supervised the employee's activities from a place of business in the State, or
> (d) the State is that of most significant relationship to the contract of employment with respect to the issue of workers' compensation under the rules of §§ 187-188 and 196, or
> (e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workers' compensation act of the State, or
> (f) the State has some other reasonable relationship to the occurrence, the parties and the employment.

*Martin*, 2011 S.D. 57, ¶ 15, 804 N.W.2d at 69-70 (quoting Restatement (Second) of Conflict of Laws § 181 (1971)). No single factor is "necessarily sufficient on its own to create a substantial connection to the employment relationship." *Id.* ¶ 15, 804 N.W.2d at 70. The factors listed in the Restatement "provide[ ] a broad overview of what is constitutionally permissible" under federal due process analysis. *Id.* In this case, however, we review the Restatement's factors in a different context: whether the factors associated with the employment relationship between Knapp and Hamm & Phillips provide a substantial connection to South Dakota, thus

establishing the Department's statutory jurisdiction based on South Dakota being the location of the employment relationship.  We must consider all of the factors surrounding Knapp's employment with Hamm & Phillips to determine if there is a substantial connection of that employment relationship to South Dakota such that the Department has statutory jurisdiction over the case.

[¶15.]     In *Martin*, we noted other cases where courts found statutory jurisdiction for workers' compensation claims in the state of the worker's residence, but there were connections between the state and the employment relationship aside from the employee's residence.  *Id.* ¶ 16, 804 N.W.2d at 70.  For example, the United States Supreme Court, considering an appeal from the District of Columbia, found that D.C. had statutory jurisdiction over a workers' compensation claim even though the injury occurred in Virginia because the employee was a resident of D.C., was hired in D.C., worked in D.C., and the employer was also based in D.C.  *See Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028 (1947).

[¶16.]     In this case, the factors do not establish an employment relationship in South Dakota.  There is no dispute that Knapp was injured in North Dakota.  Both parties also agree that Knapp worked around 60 percent of the time in North Dakota and around 35 percent of the time in South Dakota.  Based on these figures, Knapp's employment was mainly in North Dakota.  Further, Hamm & Phillips' office was located in North Dakota.  They did not have an office or other facilities in South Dakota, though they did have a state sales tax license.  In addition, Knapp and Hamm & Phillips made their contract for employment when Knapp stopped by the company's Marmarth office.  When Knapp was hired, there was no discussion or

written agreement to apply South Dakota workers' compensation law. Conversely, Knapp did work part of the time in jobs in South Dakota. He also frequently parked his truck near Buffalo and turned in daily time logs and picked up paychecks in South Dakota. But, Hamm & Phillips did not own the facilities in Buffalo. Knapp was allowed to park in Buffalo only as a matter of convenience. Even though Knapp lived in South Dakota, based on all of the factors surrounding the relationship between Knapp and Hamm & Phillips and because the injury and place of employment were in North Dakota, South Dakota is not the place of the employment relationship and the Department does not have statutory jurisdiction over the parties in this case. Therefore, we affirm Judge Bastian's decision to dismiss this case for lack of jurisdiction based upon his conclusion that South Dakota was not the place of the employment relationship, which he reached after fully reviewing the *Martin* factors in his findings.

## CONCLUSION

[¶17.] The circuit court did not err on the issue of jurisdiction when it found that there was no statutory jurisdiction for the South Dakota Department of Labor on Knapp's workers' compensation claim because the injury and employment occurred in North Dakota, and South Dakota is not the location of the employment relationship. The case was properly dismissed for lack of statutory jurisdiction.

[¶18.] KONENKAMP, ZINTER, and WILBUR, Justices, concur.

[¶19.] SABERS, Retired Justice, dissents.

[¶20.] SABERS, Retired Justice, sitting for GILBERTSON, Chief Justice, disqualified.

#26270

SABERS, Justice (Ret.) (dissenting).

[¶21.] This Court has previously recognized the United States Supreme Court's holding that:

> [A] State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its workers' compensation law in the first instance. The Full Faith and Credit Clause should not be construed to preclude successive workers' compensation awards.

*Martin v. Am. Colloid Co.*, 2011 S.D. 57, ¶ 9, 804 N.W.2d 65, 67 (citing *Thomas v. Wash. Gas Light Co.*, 448 U.S. 261, 286, 100 S. Ct. 2647, 2663, 65 L. Ed. 2d 757 (1980)). Further, the language of SDCL 62-3-3 provides that the provisions of South Dakota's workers' compensation statutes may apply "whether injury . . . occurs within this state or elsewhere . . . ." The language of SDCL 62-3-3 demonstrates the Legislature's intent that South Dakota workers' compensation statutes should apply "to at least some injuries that occur in another state[.]" *Martin*, 2011 S.D. 57, ¶ 14, 804 N.W.2d at 69. Accordingly, Knapp is entitled to a successive award of workers' compensation benefits as long as the Department has jurisdiction under South Dakota law. *Id.* ¶ 12.

[¶22.] "When determining the presence or absence of coverage for injuries occurring out of state, of primary importance is a determination as to the location of the employment relationship." *Id.* ¶ 14 (citing *Nashko v. Standard Water Proofing Co.*, 149 N.E.2d 859, 861 (N.Y. 1958)). This approach requires us to consider "factors tending to show [a] substantial connection with this [s]tate[.]" *Id.*

[¶23.]     The majority relies on the Restatement (Second) of Conflict of Laws (1971) section 181 to determine "what constitutes a substantial connection with the employment relationship." *Id.* ¶ 15. Specifically, section 181 (f) provides: "A state of the United States may consistently with the requirements of due process award relief to a person under its work[ers'] compensation statute, if . . . , or (f) the State has some other reasonable relationship to the occurrence, the parties and the employment." *Id.* (quoting Restatement (Second) of Conflict of Laws § 181 (1971)). The majority disregards the spirit and letter of the law by dismissing the final "or" prior to section 181 factor (f), thereby dismissing factor (f) altogether. Here, section 181 factor (f) is dispositive because South Dakota had a reasonable relationship to both Knapp and his employment.

[¶24.]     Knapp's reasonable relationship to South Dakota is demonstrated in several ways. Knapp lived at his home in Camp Crook, South Dakota off and on for over thirty years. Knapp's position at Hamm & Phillips Service Company, Inc., required him to drive his truck in northwestern South Dakota, which accounted for thirty-five percent of his driving time. Knapp parked his truck in Buffalo, South Dakota, at a facility owned by a customer of Hamm & Phillips. Knapp dropped off his daily time logs and picked up his paychecks from this same location in Buffalo, South Dakota. Without this South Dakota facility, Hamm & Phillips would have had to provide a facility in North Dakota at their expense. All of these factors, taken together, suggest that Knapp's relationship with South Dakota was substantial. Certainly, all of these factors taken together are not *insubstantial*.

[¶25.] The majority incorrectly focuses on the fact that "Knapp's employment was mainly in North Dakota." However, the question is not whether Knapp's employment was primarily in North Dakota. Rather, the question is whether Knapp's relationship with South Dakota was *also* substantial. That North Dakota's relation to Knapp and his employment is more substantial than South Dakota's relationship does not mean in any way that South Dakota's relationship is not also substantial.

[¶26.] Because South Dakota has jurisdiction over Knapp's claim, a successive award by the State would not be precluded by South Dakota law or the Full Faith and Credit Clause. This Court should find that the circuit court erred in determining South Dakota did not have jurisdiction, and that substitution was permitted, necessary, and proper. The majority's narrow and incorrect interpretation denies a South Dakota resident his rightful opportunity in court. Accordingly, the Case should be remanded for a determination of whether Knapp's rights to accrued but unpaid benefits were vested and were due. For these reasons, I dissent.