#29336-r-JMK
**2021 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STELLA ANDERSON,                                    Claimant and Appellant,

v.

TRI STATE CONSTRUCTION, LLC and
CINCINNATI INDEMNITY COMPANY,          Employer, Insurer, and
                                                                       Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRISTINA L. KLINGER
Judge

\* \* \* \*

REXFORD A. HAGG of
Whiting, Hagg, Hagg, Dorsey
    & Hagg, LLP
Rapid City, South Dakota                    Attorneys for claimant and
                                                            appellant.


LAURA K. HENSLEY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                   Attorneys for employer, insurer,
                                                            and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **08/25/21**

#29336

KERN, Justice

[¶1.]　　　　Stella Anderson (Anderson) was injured in Wyoming while working at a job site for Tri State Construction, LLC (Tri State), a corporation formed and headquartered in South Dakota. Tri State carried a workers' compensation insurance policy, and Anderson applied for and received workers' compensation benefits in Wyoming. Anderson later sought benefits under South Dakota's more favorable workers' compensation statutes. The South Dakota Department of Labor and Regulation (Department) concluded that it lacked jurisdiction over Anderson's claim and dismissed her petition. The circuit court affirmed the Department's decision. Anderson appeals. We reverse and remand.

## Factual and Procedural Background

[¶2.]　　　　The facts of this case are straightforward. On August 25, 2018, Anderson was hired to work for Tri State as a truck driver. Tri State specialized in the preparation of construction sites, trucking, and the sale and delivery of aggregate materials. Organized as a South Dakota limited liability company, Tri State placed its headquarters in Belle Fourche, South Dakota, and hired four office employees to operate its accounting, payroll, and human resources divisions from its Belle Fourche office. All of Tri State's other employees worked outside of South Dakota, including Anderson and her direct supervisor. Anderson, who resided in Spearfish, South Dakota, worked primarily in Wyoming.[1]

---

1. Spearfish and Belle Fourche are near South Dakota's border with Wyoming and Montana. About thirty percent of Anderson's duties required trips into Montana.

-1-

[¶3.]     When applying for the position, Anderson was interviewed and offered employment in the Belle Fourche office. The parties do not dispute that the employment contract was executed in South Dakota. She was required to pass a pre-employment drug test, which she took in Spearfish. She picked up her first paycheck at the Belle Fourche office as well as her direct deposit paystubs every two weeks thereafter, although her paychecks after the first one were directly deposited.

[¶4.]     On October 5, 2018, the day before her scheduled Mine Safety and Health Administration (MSHA) training[2] at the Belle Fourche office, Anderson was injured in a traffic accident in Colony, Wyoming, when the truck she was driving slid on a curve in the road and rolled into the ditch.[3] She sustained injuries to her neck, back, left shoulder, arm, and head in the accident and reported the injuries to Tri State that same day. The accident occurred close to the South Dakota border, and Anderson was first taken to the emergency room in Spearfish for treatment for her injuries, then transported to Rapid City, South Dakota, for further care.

[¶5.]     Tri State was insured for workers' compensation in both South Dakota and Wyoming through the Cincinnati Indemnity Company (Insurer). After Anderson's injury, Tri State conducted a post-accident interview in the Belle Fourche office and, thereafter, filed a first report of injury under the Wyoming workers' compensation program, which is a state-administered system. Anderson

2.     According to the MSHA, safety courses are designed to limit injuries and accidents that can occur when operating heavy equipment during mining operations.

3.     The parties do not dispute that Anderson was acting within the scope of her employment at the time of her injury.

began to receive benefits, including payment of her medical bills and temporary total disability payments, through Wyoming's workers' compensation system.

[¶6.]     Eventually, Anderson consulted with an attorney and discovered that Wyoming law limited her eligibility to collect total disability benefits to 80 months, whereas in South Dakota, she could be eligible to receive permanent total disability benefits. Accordingly, Anderson, who has not been able to return to work, filed a petition with the Department on February 4, 2019, seeking to prove her entitlement to permanent total disability benefits.[4] Because Anderson did not claim or receive permanent total disability benefits from the Wyoming Department of Labor, she claimed that there was no risk of duplication of benefits.

[¶7.]     On August 29, 2019, the Department issued a letter decision denying Anderson's claim, concluding that there were "insufficient contacts with South Dakota to give the Department statutory jurisdiction in this matter." On September 20, 2019, Anderson appealed the Department's determination to the circuit court. Anderson claimed the Department erred by failing to: (1) assume jurisdiction under the plain language of SDCL 62-3-3; and (2) find a substantial connection between the employment relationship and the State of South Dakota sufficient to confer jurisdiction to the Department.

[¶8.]     In a memorandum decision entered May 6, 2020, the circuit court affirmed the Department's dismissal, concluding that Anderson's "relationship with

---

4.     Anderson claims her work related injuries render her permanently and totally disabled and unable to work. Her alleged injuries include a traumatic brain injury, post-traumatic stress disorder, blurred vision, debilitating neck pain and headaches, and weakness in walking and climbing.

South Dakota for purposes of workers' compensation was minimal, at best, and did not provide a reasonable relationship that would support a substantial relationship between employment and the state of South Dakota." The court observed that Anderson worked outside of South Dakota and that collecting her pay in South Dakota was incidental to her employment duties. The court concluded that Anderson's decision to live in South Dakota was a personal choice and that, despite her training schedule, Anderson had never participated in training in South Dakota. The court further discounted the contacts Anderson's employment created with South Dakota by prioritizing where Anderson actually worked versus the place where she "was interviewed and hired." Thus, the court affirmed the Department's decision, holding that South Dakota did not have a reasonable relationship to the occurrence, the parties and the employment that could confer jurisdiction to the Department.

[¶9.] Anderson appeals, arguing the circuit court erred when it held the Department lacked jurisdiction to hear Anderson's claim for workers' compensation benefits.

## Standard of Review

[¶10.] "[A]ctions of the agency are fully reviewable when the issue is a question of law." *Knapp v. Hamm & Phillips Serv. Co.*, 2012 S.D. 82, ¶ 11, 824 N.W.2d 785, 788. "The jurisdictional question in this case—the agency's scope of authority under a statute—is a question of law reviewed de novo. Similarly, we review questions of statutory interpretation de novo." *Winslow v. Fall River Cnty.*, 2018 S.D. 25, ¶ 12, 909 N.W.2d 713, 717 (citations omitted).

## Analysis and Decision

[¶11.] "An administrative agency has jurisdiction over a matter when the agency is given power 'by law to hear and decide controversies.'" *Knapp*, 2012 S.D. 82, ¶ 12, 824 N.W.2d at 788 (quoting *Martin v. Am. Colloid Co.*, 2011 S.D. 57, ¶ 10, 804 N.W.2d 65, 67). As this Court has previously explained, the concept of jurisdiction differs in administrative law settings from that used in a traditional court setting. *Id.*; *Winslow*, 2018 S.D. 25, ¶ 8, 909 N.W.2d at 716. The determination of jurisdiction in administrative law involves three components:

> (1) personal jurisdiction, referring to the agency's authority over the parties and intervenors involved in the proceedings; (2) subject matter jurisdiction, referring to the agency's power to hear and determine the causes of a general class of cases to which a particular case belongs; and (3) the agency's scope of authority under statute.

*Knapp*, 2012 S.D. 82, ¶ 12, 824 N.W.2d at 788–89. At issue here is the third element—the scope of the Department's authority to apply South Dakota workers' compensation statutes to an accident that occurred outside the state.[5]

---

5.　As an initial matter, we address the propriety of Anderson's decision to file for workers' compensation benefits in two forums. Although Anderson had already filed a valid claim in Wyoming, the Full Faith and Credit Clause of the United States Constitution does not preclude her from receiving a successive workers' compensation award, nor is Tri State's interest in limiting its potential liability within the State "of controlling importance." *See Thomas v. Wash. Gas Light Co.*, 448 U.S. 261, 280, 100 S. Ct. 2647, 2660, 65 L. Ed. 2d 757 (1980); *see also* U.S. Const. art. IV, § 1. As this Court observed in both *Knapp* and *Martin*, the *Thomas* Court rejected a formal "rule forbidding supplemental recoveries under more favorable workmens' compensation schemes" reasoning that:

> Compensation proceedings are often initiated informally, without the advice of counsel, and without special attention to the choice of the most appropriate forum. Often the worker is

(continued . . .)

[¶12.]     South Dakota's statutory scheme for workers' compensation is set forth in Title 62 of the South Dakota Codified Laws, and under SDCL 62-3-3: "*Every employer* and employee shall be *presumed* to have accepted the provisions of this title, and shall be thereby bound, whether injury or death resulting from such injury occurs within this state *or elsewhere*, except as provided by §§ 62-3-4 to 62-3-5.1, inclusive."[6]  (Emphasis added.)

*Whether SDCL 62-3-3 applies*

[¶13.]     Anderson maintains that a plain reading of SDCL 62-3-3 unambiguously places South Dakota employers, such as Tri State, squarely within the jurisdiction of the statute.  She notes that the statute uses the term *every* before *employer* and thus, in her view, *every* South Dakota employer falls within the Department's scope of authority.  We disagree.

[¶14.]     When analyzing the text of a statute, "we adhere to two primary rules of statutory construction.  The first rule is that the language expressed in the statute is the paramount consideration.  The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction." *Winslow*, 2018 S.D. 25, ¶ 12, 909 N.W.2d at 717 (citation omitted).  The Legislature did not use the words

---

(. . . continued)

> still hospitalized when benefits are sought as was true in this case.  And indeed, it is not always the injured worker who institutes the claim.

*Thomas*, 448 U.S. at 284–85, 100 S. Ct. at 2662–63 (citation omitted).

6.     None of the exceptions in SDCL 62-3-3 are relevant to this appeal.

"South Dakota" in the statute or in the definitions in Title 62.[7]  Additionally, the plain language of SDCL 62-3-3, though it refers to every employer, does not set forth the scope of the Department's authority to hear a workers' compensation claim.[8]

[¶15.]     However, Anderson further submits that SDCL 62-3-3 creates a presumption that the Department has jurisdiction over her employment relationship with Tri State because Tri State is headquartered in South Dakota and is organized as a South Dakota business.  According to Anderson, because of this presumption, Tri State carries the burden to show that it "can opt out" of South Dakota's Workers' Compensation Act.

[¶16.]     In making this argument, Anderson misconstrues the presumption contained in SDCL 62-3-3.  Nearly a century ago in *Richardson v. Farmers' Co-Operative Union*, this Court interpreted § 9437 (formerly SDCL 62-3-3) to mean that an employer "is presumed to have accepted the [terms of the workers' compensation] act" unless an exemption in the act applies, but the employer's

---

7.     The Michigan Court of Appeals was presented with this argument and reached a similar conclusion.  *See Rodwell v. Pro Football, Inc.*, 206 N.W.2d 773, 777–78 (Mich. Ct. App. 1973) (noting that the state's legislature did not use the word "Michigan" in the statute and therefore refused to read an "additional requirement limiting the operation of [the statute] to [an in-state] employer").

8.     Conceivably, a South Dakota employer could have an employment relationship *outside* of South Dakota, and a foreign employer could have an employment relationship *inside* South Dakota.  *See, e.g., Pac. Emps. Ins. Co. v. Indus. Accident Comm'n of California*, 306 U.S. 493, 59 S. Ct. 629, 83 L. Ed. 940 (1939) (holding that California law could apply to an employee injured in California, even though the employee was from Massachusetts and worked for a Massachusetts employer).

liability is restricted "to the amounts specified in . . . the act *only* when the employer has insurance." 45 S.D. 357, 187 N.W. 632, 632–33 (1922). Failure to carry insurance constitutes an election not to operate under the protections of SDCL 62-3-3. *Utah Idaho Sugar Co. v. Temmey*, 68 S.D. 623, 626, 5 N.W.2d 486, 487 (1942). Therefore, the presumption does not refer to the Department's authority, but rather, serves to protect the employer who procures insurance.

[¶17.]    Although an employer who procures insurance coverage may seek the protections of Title 62, the claim must, as a prerequisite, be within the scope of the Department's authority. The parties do not dispute that the Insurer's workers' compensation policy brings Tri State within South Dakota's workers' compensation statutory scheme. But the Department cannot be *presumed* to have *authority* over Anderson's claim simply because Tri State purchased a qualifying insurance policy. Therefore, the plain language of SDCL 62-3-3 does not confer upon the Department a presumption of authority to hear Anderson's claim. As we observed in *Martin*, "many other states have addressed" the scope of the agency's authority "by statute," but the South Dakota Legislature has not. 2011 S.D. 57, ¶ 14, 804 N.W.2d at 69. "In situations where a statute is silent with respect to its territorial range of application, the task of determining this range of application falls entirely upon the courts and administrative tribunals." Restatement (Second) of Conflict of Laws § 181 (1971) cmt. b.

*Whether Tri State has a Substantial Connection to South Dakota*

[¶18.]    In *Martin*, we recognized that although SDCL 62-3-3 does not "provide[] a clear answer to the jurisdictional question[,]" the language of the

statute anticipates coverage for some injuries that occur outside South Dakota because it provides coverage for workers' compensation injuries occurring "*within this state or elsewhere*[.]" *Martin*, 2011 S.D. 57, ¶¶ 13, 14, 804 N.W.2d at 69 (alteration in original). Therefore, we must determine whether, consistent with due process, the Department has authority to apply South Dakota workers' compensation laws to Anderson's exterritorial injuries. *See Martin*, 2011 S.D. 57, ¶¶ 14–15, 804 N.W.2d at 69–70 (quoting Restatement (Second) of Conflict of Laws § 181 (1971)). We have explained that "to determine if South Dakota workers' compensation law covered the injury[,] [w]e look for factors that tend to show a 'substantial connection' with South Dakota on a case-by-case basis to determine the location of the employment relationship." *Knapp*, 2012 S.D. 82, ¶ 14, 824 N.W.2d at 789 (citations omitted). "No single factor is 'necessarily sufficient on its own to create a substantial connection to the employment relationship.'" *Id.* ¶ 14, 824 N.W.2d at 790 (quoting *Martin*, 2011 S.D. 57, ¶ 15, 804 N.W.2d at 70).

[¶19.] To determine whether Anderson's employment had a "substantial connection" with South Dakota, we begin by considering factors listed in the Restatement (Second) of Conflict of Laws § 181 (1971). *See Martin*, 2011 S.D. 57, ¶ 15, 804 N.W.2d at 69–70; *Knapp*, 2012 S.D. 82, ¶ 14, 824 N.W.2d at 790. Section 181 provides:

> A State of the United States may consistently with the requirements of due process award relief to a person under its workers' compensation statute, if
>
> (a) the person is injured in the State, or
> (b) the employment is principally located in the State, or
> (c) the employer supervised the employee's activities from a place of business in the State, or

(d) the State is that of most significant relationship to the contract of employment with respect to the issue of workers' compensation under the rules of §§ 187–188 and 196, or

(e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workers' compensation act of the State, or

(f) the State has some other reasonable relationship to the occurrence, the parties and the employment.

Restatement (Second) of Conflict of Laws § 181 (1971).[9]

[¶20.] Anderson argues that applying the factors to her case establishes that a substantial connection exists between South Dakota and her employment relationship with Tri State. To support her position, Anderson submits that our holdings in *Martin* and *Knapp*, although factually distinguishable, support her claim that the Department has jurisdiction in this case. We agree.

---

9.  Regarding the factor within subsection (d) above, § 187 of the Restatement (Second) of Conflict of Laws (1971) focuses on the choice of law negotiated by the parties. Anderson's employment contract, however, is silent on this issue. In such cases, § 188(2) provides that "[i]n the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account . . . to determine the law applicable to an issue include:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Further, § 196 provides that:

> The validity of a contract for the rendition of services and the rights created thereby are determined . . . by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship . . . in which the event the local law of the other state will be applied.

[¶21.] In *Martin* we analyzed the connection between South Dakota and the employment. *Martin*, 2011 S.D. 57, ¶ 16, 804 N.W.2d at 70. The employee, who was injured at the employer's facility in Wyoming, lived in Belle Fourche and worked exclusively in Colony, Wyoming, as a line worker in a large manufacturing facility. *Id.* ¶ 4, 804 N.W.2d at 66. The employer was based in Illinois and operated the Wyoming facility. *Id.* ¶¶ 2–3, 804 N.W.2d at 66. Although the employer had a small administrative office in Belle Fourche, the office did not represent the employer's headquarters, did not provide accounting, payroll, or human resources, and was not the location where the parties entered into the employment contract. *Id.* ¶¶ 3–4, 804 N.W.2d at 66. Before being hired, the employee was required to complete a physical and urinalysis at a Belle Fourche medical clinic. *Id.* ¶ 4, 804 N.W.2d at 66. Thus, the only connection between South Dakota and the employment relationship was the employee's personal residence. *Id.* ¶ 16, 804 N.W.2d at 70. Ultimately, we concluded that while this factor did, to some degree, strengthen the tie to South Dakota, it was insufficient to provide the substantial connection necessary for the Department to have authority to hear the claim. *Id.*

[¶22.] Similarly, we held that the employee in *Knapp* failed to show a substantial connection between South Dakota and the employment relationship. The employee, who was injured while working in North Dakota, lived in Montana but also owned a home in Camp Crook, South Dakota, where he lived part time. 2012 S.D. 82, ¶¶ 1–2, 824 N.W.2d at 786. The employee drove a truck hauling wastewater from oil wells in South Dakota, North Dakota, and Montana for an employer based in North Dakota and spent about thirty-five percent of his time

working in South Dakota. *Id.* ¶¶ 2–4, 824 N.W.2d at 786–87. The North Dakota employer did not have an office in South Dakota, although the employee submitted time logs and picked up paychecks at a third-party's facility in Buffalo, South Dakota. *Id.* ¶¶ 3, 16, 824 N.W.2d at 787, 791. We held that "based on all of the factors surrounding the relationship between [the employee and employer] and because the injury and place of employment were in North Dakota," the worker's employment relationship was not substantially connected to South Dakota. *Id.* ¶ 16, 824 N.W.2d at 791.

[¶23.] Here, similar to the employees in *Martin* and *Knapp*, Anderson lived in South Dakota and was injured out of state. However, unlike the employers in *Martin* and *Knapp*, Tri State—organized under South Dakota law—managed and operated its accounting, payroll, and human resources services from its headquarters in Belle Fourche. It also conducted training sessions for its employees at this South Dakota office. In fact, Anderson had been scheduled for training in that office the day after her accident. Moreover, Tri State conducted a post-accident interview with Anderson in the Belle Fourche office.

[¶24.] South Dakota also represents the place where the parties negotiated and executed the contract. Anderson was interviewed and hired by Tri State at the Belle Fourche office in South Dakota to do work in Wyoming. In contrast, the employees in *Knapp* and *Martin* entered into employment contracts outside of South Dakota.

[¶25.] In *Alaska Packers Association v. Industrial Accident Commission of California,* the United State Supreme Court held that the factor of where the

parties negotiated and executed the contract was relevant when determining the forum for adjudication of compensability. 294 U.S. 532, 540–41, 55 S. Ct. 518, 521, 79 L. Ed. 1044 (1935). In that case, the employee had entered into a contract in California, stipulating that the parties would be bound by the Alaska workers' compensation scheme for work to be done in Alaska. *Id.* at 538, 55 S. Ct. at 519. The employee subsequently sustained work-related injuries in Alaska, and upon his return to California, applied for and was granted workers' compensation benefits in conformity with California workers' compensation laws. *Id.* at 538–39, 55 S. Ct. at 520. The employer challenged the commission's decision, and the Supreme Court affirmed the California high court's judgment, holding that "where the contract is entered into within the state, even though it is to be performed elsewhere, its terms, its obligation and its sanctions are subject, in some measure, to the legislative control of the state." *Id.* at 540–41, 55 S. Ct. at 521.[10]

[¶26.]     We note that while it may be that Wyoming shared a relationship to Anderson's employment with Tri State based on the location of her duties and the accident, this does not diminish South Dakota's connection to the circumstances of the employment relationship here. As we acknowledged in *Martin*, "[i]t is conceivable that both South Dakota and another state could have a substantial connection to the employment relationship, and both could therefore be considered the location of the employment relationship. In such a case, the Department would

---

10.     Other courts have also placed special emphasis on the place the parties contracted. *See Pierce v. Foley Bros.*, 168 N.W.2d 346, 353 (Minn. 1969) (holding that a basic requirement for jurisdiction is that the employment contract was entered into in the state in question).

have jurisdiction even if the other state had awarded benefits under its workers' compensation laws." 2011 S.D. 57, ¶ 14 n.2, 804 N.W.2d at 69 n2.

[¶27.] Likewise, the location of the accident is not solely determinative of which state has a substantial connection to the employment relationship. *See Knapp*, 2012 S.D. 82, ¶ 14, 824 N.W.2d at 790 (holding that any one factor of the Restatement (Second) of Conflicts of Law is not dispositive in determining the Department's jurisdiction). In *Chambers v. Dakotah Charter, Inc.*, this Court, when applying a choice of law provision in a multi-state tort action, abandoned the archaic doctrine of lex loci delecti, which inflexibly applied the law of the place where the incident occurred, in favor of the Restatement (Second) of Conflicts of Law, which embraces the "most significant relationship approach to govern" choice of law conflicts. 488 N.W.2d 63, 64–69 (S.D. 1992).

[¶28.] Analogous to this situation is the question the United States Supreme Court confronted in *Cardillo v. Liberty Mutual Insurance Company*, where an employee worked and was injured in Virginia but lived inside the small territory of the District of Columbia. 330 U.S. 469, 474–75, 67 S. Ct. 801, 805, 91 L. Ed. 1028 (1947). The *Cardillo* Court reasoned that "[w]hen such employees reside in the District and are injured while performing those outside assignments . . . the District's legitimate interest in providing adequate workmen's compensation measures for its residents *does not turn on the fortuitous circumstance of the place of their work or injury* . . . . Rather it depends upon some substantial connection between the District and the particular employee-employer relationship[.]" *Id.* at 476, S. Ct. at 806 (emphasis added). This holding comports with our general rule

that "we construe workers' compensation statutes liberally to provide coverage" in favor of injured employees. *Goodman v. Sioux Steel Co.*, 475 N.W.2d 563, 565 (S.D. 1991); *see Sopko v. C & R Transfer Co.*, 1998 S.D. 8, ¶ 8, 575 N.W.2d 225, 229 ("The overall purpose of workers' compensation is to provide for employees who have lost their ability to earn because of an employment related accident, casualty, or disease.").

[¶29.] Based upon the foregoing, we hold that South Dakota has a substantial connection to Anderson and Tri State's employment relationship sufficient to provide the Department with authority to adjudicate Anderson's claim. Accordingly, Anderson's claim for workers' compensation benefits does not offend principles of due process. *Martin*, 2011 S.D. 57, ¶ 9, 804 N.W.2d at 67. Therefore, we reverse the circuit court's decision affirming the Department's decision and remand for further proceedings consistent with this opinion.

[¶30.] JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶31.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.