**MIDCONTINENT BROADCASTING CO. and South Dakota Broadcasters Association, Plaintiffs and Appellants,**

v.

**STATE of South Dakota, DEPART-MENT OF REVENUE, Defendant and Appellee.**

**No. 15965.**

Supreme Court of South Dakota.

Argued March 21, 1988.

Decided June 1, 1988.

David L. Knudson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, and Charles P. Schroyer of Schmidt, Schroyer, Colwill & Barnett, Pierre, for plaintiffs and appellants.

Timothy T. Weber, Asst. Atty. Gen., Pierre, for defendant and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

MILLER, Justice.

Midcontinent Broadcasting and the South Dakota Broadcasters Association (hereinafter referred to collectively as Midcontinent) appeal from a circuit court decision which affirmed a declaratory ruling of the South Dakota Department of Revenue (Department). Generally, the ruling provided that radio and television stations were obligated to pay a use tax on the amount paid for certain syndicated programming. We reverse.

## FACTS

In 1985, Department conducted sales and use tax audits of Midcontinent. The reoccurring issue in these audits related to the taxability of payments made to third party suppliers for syndicated programming material. (Examples of the syndicated programming involved include the "Paul Harvey" news broadcast for radio and re-runs of "M\*A\*S\*H" for television.) The syndicated program material involved is protected by copyright and is subject to use limitation by the radio or television station as to the: (1) number of uses; (2) time period within which the material must be utilized; (3) market area within which the materials

may be used; and (4) transfer to third parties. The syndicated programming contracts also provide for exclusivity within a particular market area. Finally, some of the syndicated programming materials are provided and produced directly by radio and television stations while others are produced by independent programming production companies.

After unsuccessful attempts to informally negotiate this issue, Midcontinent filed a petition for a declaratory ruling. Department ruled that South Dakota radio and television stations are obligated to pay use tax on syndicated programming payments made to third parties.

Midcontinent appealed Department's declaratory ruling to the circuit court, which affirmed Department. Midcontinent appeals to this court.

## ISSUES

Midcontinent has raised several issues in this appeal. They argue that (1) the payments for syndicated programming are in essence copyright payments and thus not taxable; (2) the First Amendment prohibits the singling out of the media for special tax treatment; (3) syndicated programming and columns are not retail transactions but rather are wholesale transactions; (4) the syndicated programming use tax unfairly discriminates among various broadcast and media institutions; and (5) if taxable, a reduction in amount assessed is appropriate as a portion of the syndicated programming is used out of state.

Since we conclude that the transactions here are not taxable because they are wholesale rather than retail transactions, we need not address the other issues raised.

## DECISION

Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by Department or the cir-

cuit court. *In the Matter of the State Sales & Use Tax Liability of Sioux Falls Newspapers, Inc.,* 423 N.W.2d 806 (S.D. 1988) (citations omitted).

Department argues that the syndicated programs are delivered to broadcasters in some type of media form (film or tape), which form is tangible personal property. Thus, Department asserts that a showing or broadcast of this film or tape is the use of tangible personal property subject to the use tax imposed by SDCL 10–46–2.[1]

a. *Whether syndicated materials are tangible personal property.*

■ Recently, in *Sioux Falls Newspapers, supra,* we held that syndicated materials are tangible personal property. In that case, the Argus Leader claimed that the syndicated materials were intangible information placed on pieces of paper which were merely transferred by a tangible medium. We specifically stated:

It is not necessary for us to determine whether intangible *information* may be severed from the tangible medium of transmission. The items involved in this assessment are not raw information, but the tangible end product of an individual's skills. *See Columbia Pictures Industries, Inc. v. Tax Commissioner,* [176 Conn. 604], 410 A.2d 457, 461 (Conn. 1979). Columns, features, and editorials such as those written by Art Buchwald, Ann Landers, Erma Bombeck, Sylvia Porter, George Will, and Ellen Goodman, are not just rote reporting of current news events; they are the finished product of a writer's skills. Likewise, the comics are the finished product of an artist's or writer's skills. Therefore, we hold that these syndicated materials are tangible personal property. (Emphasis in original.)

423 N.W.2d at 810. Just as the syndicated materials in *Sioux Falls Newspapers* were deemed to be tangible personal property, so

---

1. SDCL 10–46–2 provides:

    An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on

or after July 1, 1939, for use in this state at the same rate of percent of the purchase price of said property as is imposed by §§ 10–45–2 and 10–45–3....

are the syndicated materials presented in this case.

b. *Whether the payments for syndicated programming are wholesale, rather than retail transactions.*

█ Midcontinent argues that the gathering of information, which provides the content of broadcast programming, is a wholesale transaction because that information is then later transmitted to the public via broadcast in a retail fashion. Midcontinent argues that the ultimate product of broadcasters is the sale of broadcast time and a component of that broadcast time is often the syndicated programming. Department, on the other hand, argues that the syndicated materials are the finished product which are used and consumed only by Midcontinent. Department argues that Midcontinent sells advertising, not syndicated programming.[2]

These same basic arguments were made in *Sioux Falls Newspapers, supra.* We noted there that the syndicated materials therein were purchased by the Argus Leader with the intent to reproduce them in the newspaper to sell to readers. We held that the syndicated materials were purchased for resale in the ordinary course of the Argus Leader's business, and that this was a nontaxable resale use under SDCL 10–46–1(2).[3]

Although there may be some dissimilarities between the newspaper and the broadcasting business, we believe that, in both cases, syndicated materials are an integral part of the final product (here, broadcast time). Broadcast time is made up of news, information, entertainment and advertising. Syndicated programming is an integral component of radio and television stations.

We conclude that the purchase of the syndicated material by Midcontinent was a nontaxable resale use under SDCL 10–46–1(2).[4] Such materials are an essential part of broadcasting and are purchased for resale in the ordinary course of business.

This is the second case in recent months in which Department, through their audit and legal departments, has attempted to stretch and strain the tax statutes in order to attempt to tax various media entities. At oral argument, their counsel agreed that these statutes are neither sufficiently clear nor specific as to their specific intent to tax these entities in the requested manner. Would it not be more appropriate for Department to seek their remedy in the legislature, which creates the tax and its exemptions, rather than attempt to obtain their revenue through resort to judicial fiat? We believe so.

Reversed.

All the Justices concur.

---

2. However, the 1987 Standard Industrial Classification Manual, Group No. 483 at p. 283, views programming as the end product of television and radio broadcasting.

3. SDCL 10–46–1(2) provides, in part, that the term "use" "does not include the sale of [tangible personal] property in the regular course of business."

4. Furthermore, because SDCL 10–45–12.1 specifically exempts retail products of newspapers, radio, and television broadcasting, a use tax imposed on syndicated programming would not have its complimentary function to any sales tax. *See* footnote 3 of *Sioux Falls Newspapers, supra.*