#27055-r-JKK

**2014 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

FIRST GOLD, INC., MINERAL
PALACE, LP and FOUR ACES
GAMING, LLC,                                    Plaintiffs and Appellants,

      v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE AND REGULATION,              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

SANDRA HOGLUND HANSON of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota                       Attorneys for plaintiffs
                                                and appellants.


MARTY J. JACKLEY
Attorney General

JARED C. TIDEMANN
JEROMY J. PANKRATZ
Assistant Attorneys General
Pierre, South Dakota                            Attorneys for defendant
                                                and appellee.

* * * *

ARGUED ON
NOVEMBER 17, 2014
OPINION FILED **12/17/14**

#27055

KONENKAMP, Justice

[¶1.] Three Deadwood casinos jointly brought a declaratory judgment action in circuit court seeking a ruling that their "free play" promotional programs are not subject to gaming tax under SDCL chapter 42-7B. After an adverse ruling in circuit court, the casinos appealed.

## Background

[¶2.] First Gold Hotel, Mineral Palace Hotel and Gaming, and Four Aces Gaming, LLC (Establishments) each run promotional programs intended to attract patrons to their casinos. If the patrons join an establishment's "club," they receive coupons or credits called "free play." Each establishment has its own operating rules, but it is agreed that free play allows patrons to play slot machines without using any of their personal money. Patrons cannot purchase free play, and distributed free play credits or coupons have an expiration date. Free play cannot be redeemed for cash, merchandise, or other promotional offers. Yet patrons can win money from the use of free play credits or coupons.

[¶3.] The Establishments brought suit in circuit court against the South Dakota Department of Revenue and Regulation requesting a declaration that free play is not part of adjusted gross proceeds and, therefore, is not subject to gaming tax. Both sides moved for summary judgment. The Establishments contended that free play is not subject to gaming tax under SDCL chapter 42-7B because no statute or regulation "dictates that free play must be included in gross revenue in the first place." The Department responded that free play is taxable because the gaming tax regulations specifically say that promotional awards are not a deductible event.

The Department relied on a ruling from the South Dakota Gaming Commission declaring that "promotional money shall be reported as gross revenue and/or adjusted gross proceeds[.]"

[¶4.] The circuit court issued a number of rulings, but only the taxability question remains for our consideration. On that subject, the court held that the Establishments were not entitled to declaratory relief because the administrative regulations on gaming clearly and unambiguously provide that promotional play — i.e., free play — is not a deductible event in the calculation of adjusted gross revenue. *See* ARSD 20:18:18:26. Reasoning that free play has value "in its possibility of enticing patrons to play, which also translates to money," the court concluded that any ambiguity in the administrative regulations must be construed to mean that promotional awards are not deductible. Thus, the court granted the Department's motion for summary judgment, holding that free play must be included in adjusted gross proceeds.

## Analysis and Decision

[¶5.] In this appeal, we address only the interpretation of South Dakota's gaming tax statutes and regulations; specifically, whether slot machine free play is subject to gaming tax as adjusted gross proceeds under SDCL 42-7B-28, -28.1.* The

---

\* The circuit court considered additional issues, such as whether the Establishments could obtain a refund and whether a declaratory action was the proper vehicle for tax questions. The Establishments concede that they cannot obtain a refund in this declaratory action, and the Department concedes that a declaratory action is proper for addressing taxability questions. *See* SDCL 21-24-1 (the circuit court has the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed").

Establishments contend that the circuit court erred when it declared that free play must be counted as part of adjusted gross proceeds under SDCL chapter 42-7B because no statute or regulation includes free play in the calculation of adjusted gross proceeds. They further assert that regulatory language regarding the *deductibility* of promotional awards is immaterial; this case concerns whether free play is *includable* in the first place.

[¶6.]     "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by the Department or the circuit court." *Midcontinent Broad. Co. v. S.D. Dep't of Revenue*, 424 N.W.2d 153, 154 (S.D. 1988). Moreover, when the question is whether a statute imposes a tax, we construe the statute "liberally in favor of the taxpayer and strictly against the taxing body." *Nat'l Food Corp. v. Aurora Cnty. Bd. of Comm'rs*, 537 N.W.2d 564, 566 (S.D. 1995) (quoting *Thermoset Plastics, Inc. v. S.D. Dep't of Revenue*, 473 N.W.2d 136, 138 (S.D. 1991)) (internal quotation mark omitted). "The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained *primarily* from the language expressed in the statute." *Goetz v. State*, 2001 S.D. 138, ¶ 16, 636 N.W.2d 675, 681 (quoting *US West Commc'ns, Inc. v. Pub. Utils. Comm'n*, 505 N.W.2d 115, 123 (S.D. 1993)). We must give a statute's language "a reasonable, natural, and practical meaning" to effect its purpose. *Robinson & Muenster Ass'n v. S.D. Dep't of Revenue*, 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612. Essentially the same tenets apply to our construction of administrative rules. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D. 1982).

[¶7.] Here, the Legislature imposes a tax of eight plus one percent on the adjusted gross proceeds from allowed gaming. SDCL 42-7B-28, -28.1. "Adjusted gross proceeds" is defined as "gross proceeds less cash prizes." SDCL 42-7B-4(1). "Gross proceeds" is not further defined by statute, so we look to the administrative rules promulgated by the Gaming Commission as part of the Commission's rule-making authority. *See* SDCL 42-7B-7. The gaming regulations refer to "gross revenue" rather than "gross proceeds," but, for the purpose of this proceeding, both sides agree the terms are synonymous. Under ARSD 20:18:22:12, gross revenue for each slot machine "equals drop less fills to the machine jackpot payouts, hand pay credit lockups, and vouchers issued."

[¶8.] It is not readily apparent from ARSD 20:18:22:12 that "free play" is included in the calculation of gross revenue. The "drop" is the only inclusion in the calculation, and "drop" is defined as "the total amount of *money*, *chips*, and *tokens* removed from the drop boxes[.]" ARSD 20:18:01:01(8) (emphasis added). A "chip" is defined as "a nonmetal or partly metal representative of value, redeemable for cash, issued and sold by a licensee for use at gaming[.]" ARSD 20:18:20:01(1). A "token" is defined as "a metal representative of value, redeemable for cash, issued and sold by a licensee for use at gaming." *Id.* at (2). "Free play," however, is the "use of a coupon that is issued to a patron by an establishment for play for which no bet is required[.]" ARSD 20:18:01:01(11). Because free play is a coupon and not money, chips, or tokens, it is not part of the drop.

[¶9.] The Department argues that free play is "in essence a computerized token" and "has value" to the Establishments, a value taxable as income. Our

function is to "construe administrative rules according to their intent[,]" as ascertained from the rules as a whole. *Estate of He Crow v. Jensen*, 494 N.W.2d 186, 191 (S.D. 1992). We confine ourselves to the language used in the regulations. *Goetz*, 2001 S.D. 138, ¶¶ 15-16, 636 N.W.2d at 681. As with statutes, when the meaning of a regulation is clear and unambiguous, we only declare its meaning "as clearly expressed." *See US West Commc'ns, Inc.*, 505 N.W.2d at 123. Here, a free play coupon is not money, a token, or a chip. The language defining a "drop" is clear and unambiguous, and therefore, we must only declare the meaning of the regulation. It is immaterial that free play might be valuable to the Establishments, and whether it is "in essence" a token does not mean a free play coupon is a token. On the contrary, the clear language of ARSD 20:18:20:01(2) defines a token as "a metal representative of value, redeemable for cash, issued and sold by a licensee for use at gaming."

[¶10.]     On another tack, the Department argues that free play must be included in the calculation of adjusted gross revenue because ARSD 20:18:18:26 specifically provides that "[p]romotional awards are not a deductible event in the adjusted gross revenue calculation," and ARSD 20:18:20.02:01 provides that an establishment that "engages in promotions to increase business . . . may not deduct payouts made pursuant to the promotion from adjusted gross income[.]" And the Department relies on the Gaming Commission's ruling in 2007 that promotional awards must be included in the calculation of adjusted gross proceeds under SDCL chapter 42-7B.

[¶11.]     The Gaming Commission's legal opinion that the gaming statutes and regulations impose a gaming tax upon a promotional program similar to the Establishments' free play program in this case is not controlling. *See Midcontinent Broad. Co.*, 424 N.W.2d at 154. We review de novo whether a statute or regulation imposes a tax, and based on our review of ARSD 20:18:18:26 and ARSD 20:18:20.02:01, neither regulation supports the conclusion that the value of free play is included in the calculation of adjusted gross revenue. True, both regulations clearly provide that promotional awards and payouts cannot be *deducted*. But prohibiting a *deduction* for *awards* and *payouts* from promotions does not perforce mean that the regulations therefore *include* the value of a *free play coupon*. On the contrary, ARSD 20:18:18:26 and ARSD 20:18:20.02:01 confirm that these regulations do not *include* free play in the calculation of adjusted gross revenue.

[¶12.]     Under ARSD 20:18:18:26, "[p]romotional and bonus systems" are described as "gaming devices that are configured to participate in electronically communicated promotional and bonus award payments from an approved host system." Promotional awards "entitle players to special promotional awards based on patrons' play activity or awards gifted by the casino to guests." *Id.* These awards, therefore, "are not a deductible event in the adjusted gross revenue calculation." *Id.* Unlike promotional awards, however, "[p]ayouts as a result of a bonus event are a deductible event in the adjusted gross revenue calculation." *Id.* This is because "[b]onus awards are based on a specific wager or specific event and are available to all patrons playing bonused slot machines." *Id.* Looking then to ARSD 20:18:20.02:01, when a *promotional award* is the result of a *specific wager*,

the establishment may deduct the payouts made pursuant to the promotion. Free play is not the result of a specific wager because it is defined as a "play for which no bet is required[,]" ARSD 20:18:01:01(11), and a "bet" requires a "*wager* in a game of chance[,]" SDCL 42-7B-4(2). (Emphasis added.)

[¶13.]     The only reasonable, natural, and practical interpretation of the gaming laws and regulations is that the value of free play is not included in calculating adjusted gross revenue and, therefore, is not part of adjusted gross proceeds under SDCL chapter 42-7B. Indeed, the Establishments receive no income, and the patron wagers nothing. Consequently, there is nothing to include, and any awards or payouts as a result of free play provide nothing to deduct. Because the statutes and regulations do not include the value of free play for slot machines in the calculation of an establishment's adjusted gross revenue, the circuit court erred when it ruled that the Establishments must remit gaming tax under chapter 42-7B for the value of free play.

[¶14.]     Reversed with instructions to enter a declaratory judgment for the Establishments in accordance with this decision.

[¶15.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.