#27265-aff in pt & rev in pt-LSW

**2015 S.D. 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MIDWEST RAILCAR REPAIR, INC.,                    Appellee,

    v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE,                    Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

CATHERINE A. TANCK
SANDRA HOGLUND HANSON of
Davenport, Evans, Hurwitz
  & Smith LLP
Sioux Falls, South Dakota                    Attorneys for appellee.


JOHN T. RICHTER of
South Dakota Department of Revenue
Pierre, South Dakota                    Attorneys for appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015

OPINION FILED **11/24/15**

#27265

WILBUR, Justice

[¶1.]    Taxpayer challenged the South Dakota Department of Revenue's certificate of assessment for use tax on parts and materials taxpayer used in its service of railcars for two affiliated companies.  In a separate proceeding, taxpayer appealed the Department's denial of its refund requests for sales tax paid on its service of railcars received in South Dakota but delivered and used outside South Dakota.  The Department consolidated the proceedings for an administrative hearing.  The hearing examiner, and ultimately the Secretary of the Department, affirmed the certificate of assessment and upheld the Department's denial of taxpayer's refund requests.  Taxpayer appealed, and the circuit court reversed the Department's May 2013 final decision related to both the certificate of assessment and the Department's denial of taxpayer's refund requests.  The Department appeals.  We affirm in part and reverse in part.

## Background

[¶2.]    Although procedurally this case involves an appeal from one administrative proceeding, the case implicates two distinct tax issues.  For ease of reading, we separately describe the facts related to each.

### 1. *Use Tax Assessed on Parts and Materials used by Midwest for CarMath and M&C Leasing Railcars*

[¶3.]    Midwest Railcar Repair, Inc. is owned by Greg Carmon and is in the business of servicing railcars for various customers.  Carmon also owns CarMath and M&C Leasing.  CarMath and M&C Leasing own and lease railcars to third parties.  CarMath, M&C Leasing, and Midwest are independent companies.

-1-

Midwest services railcars for CarMath and M&C Leasing.  In its service of the railcars, Midwest incorporates parts and materials from its inventory.

[¶4.]        On September 27, 2006, the South Dakota Department of Revenue issued Midwest a notice of intent to audit its sales and use tax licenses for the tax periods covering October 2003 to October 2006.  In November 2006, Department employees Wayne Palmer and Willis Dreesman met with Midwest employee Timothy Hoon and commenced the audit.  During the audit, Auditor Palmer informed Hoon that Midwest owed use tax on materials and parts incorporated into railcars serviced for CarMath and M&C Leasing.  Hoon replied that Midwest did not pay use tax on materials and parts because the Department had issued Midwest written advice in 1996 (1996 Advice Letter) that parts and materials used in its modification of railcars were not subject to tax.[1]  Hoon presented the letter to Auditor Palmer.  Auditor Palmer responded that the Department's advice letter had been overridden by this Court's decision in *Butler Machinery Co. v. South Dakota Department of Revenue*, 2002 S.D. 134, 653 N.W.2d 757.

[¶5.]        In January 2007, the Department issued a certificate of assessment in the amount of $94,046.08, which included $15,790.84 of interest.  In March 2007, Midwest filed a written request for an administrative hearing and, in April 2007, a

---

1.    The letter provided in part:

> If a railcar that is leased is purchased for lease purposes and is later modified to meet lessee specifications, is there South Dakota sales or use tax due on the costs of modification?  Since this is a modification and not a repair, and the lease agreement itself would obviously be structured around this modification, then the modification would be able to be purchased on a tax unpaid, sale for resale basis.

protective refund claim for taxes previously paid in the amount of $1,052,096.10.  In its request for an administrative hearing, Midwest claimed the certificate of assessment was improper because the imposition of use tax is "contrary to the written advice issued by the Department on September 4, 1996[.]"  Midwest asserted that the Department improperly assessed a use tax (1) on "items purchased for resale or for lease[,]" (2) "on replacement parts installed or to be installed in tangible personal property that will ultimately be held for resale or for lease[,]" and (3) "on payments of one member of a controlled group to another member of a controlled group" in violation of SDCL 10-45-20.1.[2]  And Midwest claimed that the South Dakota Constitution, United States Constitution, and the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11501(b)(4) (4-R Act) prohibited the Department from assessing use tax.

[¶6.]        Prior to an administrative hearing, Midwest commenced suit in federal court seeking a declaration that South Dakota's assessment of use tax violated the 4-R Act.  Although Midwest did not prevail, this federal suit is relevant because the Department argues to this Court that Midwest should be judicially estopped from asserting that it modifies railcars when it argued during the federal litigation that

---

2.      SDCL 10-45-20.1 provides:

> Payments made by one member of the controlled group to another member of a controlled group which represent an allocation, reimbursement, or charge for services provided by or rendered by the members of the controlled group are specifically exempted from the provisions of this chapter and the computation of the tax imposed by it.  The exemption provided in this section does not apply to the lease of tangible personal property or any product transferred electronically unless the sales or use tax has been paid on the property by the lessor.

it repairs railcars. *See Midwest Railcar Repair, Inc. v. S.D. Dep't of Revenue & Regulation*, 659 F.3d 664 (8th Cir. 2011); *Midwest Railcar Repair, Inc. v. S.D. Dep't of Revenue & Regulation*, 2010 WL 2545952 (D.S.D.).

### 2. Midwest's Service to Burlington Northern Railcars: The Source of the Sale for Sales Tax Purposes

[¶7.] In addition to servicing railcars for CarMath and M&C Leasing, Midwest services railcars for other companies, many of whom are located outside South Dakota. Its service of these railcars was not the subject of the Department's notice of intent to audit or certificate of assessment. In fact, Midwest had been paying South Dakota tax on its service of these railcars. In 2008, Midwest requested written advice from the Department on the taxation of its service based on SDCL 10-45-108. That statute provides that "a retailer shall source sales of tangible personal property . . . and services to the location where the tangible personal property . . . or service is received." *Id.* Midwest's written request explained that, although its service to the railcars was performed at Midwest's business location in South Dakota, the railcars were brought to Midwest from a location outside South Dakota by Burlington Northern Railroad and received by the customer outside South Dakota via the railroad. Midwest believed the sale should be sourced outside South Dakota. Midwest specifically excluded from its written request the service it provided to railcars owned and leased by Burlington Northern and its affiliates.

[¶8.] The Department issued Midwest written advice on October 23, 2008 (2008 Advice Letter), providing in part that "[t]he Department agrees with your analysis that Midwest Railcar's services would be sourced to the location to where

the railcars are delivered by common carrier." The Department advised that "Midwest Railcar's services of repairing and refurbishing railcars delivered by common carrier to locations outside of South Dakota would not be subject to South Dakota tax." But the Department qualified that "this written advice does not apply to railcars owned or leased by the common carrier railroad or its affiliates."

[¶9.]        Based on the 2008 Advice Letter, Midwest discontinued paying South Dakota tax on non-Burlington Northern railcars and submitted nine refund claims. Midwest's refund requests included taxes it paid on its service to Burlington Northern railcars. The Department granted Midwest's refund requests for taxes paid and applicable interest related to its service to non-Burlington Northern railcars. But it denied the claims related to sales tax paid on Midwest's service to Burlington Northern railcars. According to the Department, Midwest's repair service to Burlington Northern railcars was subject to South Dakota tax because Burlington Northern took possession of its railcars at Midwest's business location in South Dakota. In March 2010, Midwest appealed the Department's denial of its refund requests.

### 3.  *The Administrative Proceedings*

[¶10.]        The Department consolidated Midwest's appeal from the denial of its refund request with Midwest's 2007 request for an administrative hearing challenging the certificate of assessment for use tax on parts and materials incorporated into Midwest's service to CarMath and M&C Leasing railcars.

#### i.  *Certificate of Assessment on Midwest's Parts and Materials*

[¶11.]     During the administrative hearing on October 25, 2012, Midwest sought to admit invoices and lease explanations as evidence that parts and materials used in its service to CarMath and M&C Leasing railcars were not subject to use tax. The Department objected and asserted that SDCL 10-59-3 and -7 precluded Midwest from relying on the invoices and lease explanations because Midwest did not present these documents to the auditor within sixty days of the commencement of the audit. The hearing examiner overruled the Department's objection and accepted the exhibits into evidence.

[¶12.]     The Department also challenged Midwest's attempt to rely on the 1996 Advice Letter. The Department asserted that the letter was not issued to Midwest specifically, but to certified public accountant Jim Pfeiffer. The Department alternatively argued that even if Midwest had a right to rely on the 1996 Advice Letter, *Butler Machinery Co.* overruled the advice and Midwest's service is subject to tax. In response, Midwest explained that, although the Department did not issue the 1996 Advice Letter to Midwest directly, Greg Carmon had asked Pfeiffer to request written advice from the Department on Midwest's behalf. Pfeiffer forwarded a copy of the letter to Carmon, and Midwest retained a copy of this letter in its file. The hearing examiner did not specifically overrule the Department's objection.

### ii. *Refund for Repair Services to Burlington Northern Railcars*

[¶13.]     Senior Revenue Agent Darrin Gerry testified that based upon the Department's training on sourcing rules, Midwest's repair services to Burlington Northern railcars implicated South Dakota sales tax. He noted that Midwest did

not dispute that Burlington Northern, the purchaser, received its repaired railcars at Midwest's business location in South Dakota. Therefore, he opined that the Department properly denied Midwest's refund requests.

[¶14.]     Greg Carmon testified that Midwest's service to Burlington Northern railcars was no different than that provided to non-Burlington Northern railcars. Although Burlington Northern obtained possession of its railcars in South Dakota, it could not use or place its railcars into service until the repairs were accepted or rejected at Burlington Northern's place of business outside South Dakota. Midwest argued that the sale of repair services to Burlington Northern railcars should be sourced in the same manner as Midwest's sale to non-Burlington Northern railcars.

### iii.  Hearing Examiner's Decision

[¶15.]     On April 23, 2013, the hearing examiner issued a written proposed decision. It found that "Midwest repairs and refurbishes railcars" and that the railcars "are brought to Midwest on railroad tracks that are owned by Burlington [Northern]." According to the hearing examiner, Burlington Northern "owns the tracks, the railcars, and the computer that decides which cars go where. It is safe to assume that Burlington has direction and control over where Burlington wants to use its own railcars." The hearing examiner concluded that Midwest's repair service to Burlington Northern railcars was subject to South Dakota tax. "When Burlington picks up its own railcars, on its own tracks, routed through its own computer, the taxes should be sourced to the location where Burlington takes possession of the railcars, Midwest."

[¶16.] The hearing examiner further found that "Midwest is not exempt from taxes on services provided to [CarMath] and M&C Railcar [sic] during the audit period." The hearing examiner considered the 1996 Advice Letter because, in the examiner's view, it was sent to "Jim Pfeiffer, an accountant for Midwest." The hearing examiner noted that the letter applied to "a railcar modified for lease purposes" and advised that such service "is not subject to taxes." But the hearing examiner interpreted *Butler Machinery Co.* to override the 1996 Advice Letter. The hearing examiner also held that parts and materials incorporated into the serviced railcars were subject to tax, although Midwest, CarMath, and M&C Leasing are part of the same controlled group under SDCL 10-45-20.1. The examiner said, "When a part is removed from inventory and used, it is subject to a use tax."

[¶17.] On May 9, 2013, the Secretary of the Department adopted the hearing examiner's proposed decision "in full" and declared "that the South Dakota Department of Revenue shall be affirmed in all respects." In June 2013, Midwest appealed the Department's final decision to the circuit court. It asserted among other things that (1) it was entitled to a refund for sales tax paid on repair services to Burlington Northern railcars shipped outside South Dakota, (2) parts and materials incorporated into its service to CarMath and M&C Leasing railcars were exempt from use tax based on the 1996 Advice Letter, and, in the alternative, (3) incorporated parts and materials were exempt under ARSD 64:06:02:58.

### iv. Circuit Court Proceedings and Decision

[¶18.] During the hearing before the circuit court on November 25, 2013, the Department again objected to Midwest's attempt to admit claims or evidence that it

failed to submit or assert within sixty days of the commencement of the audit. *See* SDCL 10-59-3, -7. The court overruled the Department's objections and considered the evidence and claims. On February 24, 2014, the circuit court issued an incorporated memorandum decision, and, on August 27, 2014, findings of fact and conclusions of law. The circuit court rejected the Department's argument that Midwest was precluded from raising any claim not asserted within sixty days of the commencement of the audit because SDCL 10-59-3 and -7 "do not require the taxpayer to 'raise issues' with the auditor in order to be able to challenge the final assessment after the audit is completed." The court found that "[t]here is no claim that Midwest failed to provide any documents or records to the auditor in this case."

[¶19.]     The court reviewed the evidence admitted by Midwest during the administrative hearing and found that "Midwest performs modifications and repairs on railcars" owned by CarMath and M&C Leasing and "leased to others." Relying on the lease agreement descriptions, the court determined that "Midwest modifies the railcars to meet those lease specifications." The court rejected the Department's claim that Midwest could not rely on the 1996 Advice Letter because "[t]he record seems pretty clear that the Department was aware that the advice was sought on behalf of Midwest by its CPA as Midwest's agent." Next, the court held that the hearing examiner and Department incorrectly interpreted *Butler Machinery Co.* to override the 1996 Advice Letter. According to the circuit court, "[t]here is a difference between using parts to maintain a rental fleet that is already under lease, as opposed to using parts to build a product that conforms to the lease description, as is the case for Midwest." The court ruled that Midwest was entitled

to continue to rely on the 1996 Advice Letter. The court held that "the parts incorporated by Midwest into the refurbished railcars as part of the overall restoration process" were "excluded from sales or use tax consequences" because the Department had ruled that Midwest's railcar services for CarMath and M&C Leasing were exempt from tax under the controlled group exemption.

[¶20.] The circuit court next ruled that Midwest's service to Burlington Northern railcars should be sourced outside South Dakota. The court rejected the Department's claim that Burlington Northern could not act as both the shipping company and purchaser. In reaching this interpretation, the court noted that "[o]ther courts that have considered similar situations have ruled that a railroad can be both a shipper and a buyer." *See Wyo. v. Dep't of Revenue v. Union Pac. R.R. Co.*, 67 P.3d 1176 (Wyo. 2003); *Standard Oil Co. v. Johnson*, 147 P.2d 577 (Cal. 1944); *H-R Truck & Equip. Co. v. State Bd. of Equalization*, 333 P.2d 151 (Cal. Ct. App. 1958). According to the court, "[t]he testimony at the hearing was undisputed that Burlington did not take possession of its railcars, other than in its capacity as a shipping company, until they reached their destination as set forth in the waybill or bill of lading" outside South Dakota. Thus, the court concluded that "both Burlington and non-Burlington customers 'received' the repaired railcars at the out-of-state destination specified by the customer[.]"

[¶21.] In October 2014, the circuit court issued an order reversing the Department's May 2013 final decision. The court ordered that Midwest "is entitled to recover refunds of all of its overpayments of sales tax on out-of-state repair services for the Burlington Northern" during and after the audit period. It also

ordered that Midwest is entitled to recover the amount overpaid under SDCL 10-59-9 prior to the appeal from the final decision of the Secretary of the Department on use tax for its service to CarMath and M&C Leasing railcars, which amount included $63,724.43 of use tax. And the court ordered that Midwest is entitled to interest on the refund amounts under SDCL 10-59-24. The Department appeals asserting the following issues for our review:

1. Whether the circuit court erred when it held that the Department erred in assessing use tax on repair parts that Midwest used to perform repair services when no sales tax had ever been paid on those parts.

2. Whether the circuit court erred when it held that Midwest's repair services provided in South Dakota should be sourced elsewhere for the audit period and refund periods following the audit.

## Standard of Review

[¶22.] Our standard of review of an administrative appeal is well settled. *Knapp v. Hamm & Phillips Serv. Co., Inc.*, 2012 S.D. 82, ¶ 11, 824 N.W.2d 785, 788 (citing SDCL 1-26-37). We will not overturn an agency's findings of fact unless they are clearly erroneous. *Id.* Conclusions of law are given no deference. *Id.* Questions of statutory interpretation are reviewed de novo. *Id.*

## Analysis

### 1. Use Tax Assessed on Parts and Materials used by Midwest for CarMath and M&C Leasing Railcars

[¶23.] The Department challenges the circuit court's decision to invalidate the certificate of assessment for multiple reasons. First, it asserts that Midwest failed to establish under SDCL 10-59-9 that the certificate of assessment was based upon a mistake of fact or error of law. The Department also claims that the circuit

-11-

court erred when it entered independent factual findings that Midwest modified and refurbished the railcars. In the Department's view, the record supported the hearing examiner's factual finding that Midwest performed "repairs[.]" Third, the Department contends that Midwest should be judicially estopped from asserting that it modifies railcars because, for four years during the federal litigation, Midwest took the position that it repairs railcars. Lastly, the Department claims that Midwest failed to timely submit its documentary evidence under SDCL 10-59-3 and -7 to support its claim that it performs modifications instead of repairs, and, therefore, the evidence should not have been considered.

### i. Failure to Timely Submit Evidence

[¶24.]        The Department claims that Midwest failed to timely submit documentary evidence. Midwest responds that the Department failed to preserve the issue because the Department did not file a notice of review from the hearing examiner's decision to admit Midwest's evidence. Midwest claims that, even if the issue were preserved, Midwest's documentary evidence was not required to be submitted within sixty days of the commencement of the audit because the invoices and written lease descriptions were not "required by law" to be submitted to the auditor.

[¶25.]        At the administrative hearing, Midwest offered (and the hearing examiner admitted over the Department's objection) documentary evidence related to Midwest's service to CarMath and M&C Leasing railcars. Midwest relied on this evidence to establish that it did not *repair* CarMath and M&C Leasing railcars, but instead *modified* the railcars in preparation for specific lease agreements.

[¶26.]     The Department's notice of intent to audit informed Midwest that "[a]ll documents evidencing reduction, deduction or exemption of tax not prepared for presentation within sixty days of the date of commencement of the audit need not be considered by the auditor." *See* SDCL 10-59-3. Further, SDCL 10-59-7 provides that "[a]ny documents or records required to be kept by law to evidence reduction, deduction, or exemption from tax not prepared for presentation to the auditor within sixty days from the commencement date of the audit do not have to be considered by the auditor or the secretary." It is undisputed that Midwest sought to rely on this evidence to establish exemption from taxation and that Midwest did not present this evidence within sixty days from the commencement date of the audit.

[¶27.]     This Court has said that a taxpayer has no right to rely on evidence offered after the sixty days required by SDCL 10-59-3, -7. *Doctor's Assocs., Inc. v. Dep't of Revenue & Regulation*, 2006 S.D. 18, ¶ 22, 711 N.W.2d 237, 243; *In re Pam Oil, Inc.*, 459 N.W.2d 251, 257 (S.D. 1990). This is because "[t]o allow late submittal of these materials long after the audit has ended would make the audit process interminable and unworkable." *Doctor's Assocs., Inc.*, 2006 S.D. 18, ¶ 22, 711 N.W.2d at 243. To preserve an administrative ruling for this Court's review, an appellee must file a notice of review at the circuit court level. *Brown v. Douglas Sch. Dist.*, 2002 S.D. 92, ¶¶ 31-32, 650 N.W.2d 264, 272-73; SDCL 1-26-36.1. Because the Department did not file a notice of review, the issue is waived.

### ii.  *Judicial Estoppel*

[¶28.]     We disagree that Midwest is judicially estopped from asserting that it modifies CarMath and M&C Leasing railcars. Judicial estoppel "requires that a

party's prior inconsistent assertion be judicially adopted[.]" *Bailey v. Duling*, 2013 S.D. 15, ¶ 33, 827 N.W.2d 351, 362. The Department does not contend that the federal court accepted Midwest's position, nor did Midwest prevail in its federal suit.

### iii. Certificate of Assessment: Error of Law or Mistake of Fact

[¶29.]     Department claims that Midwest cannot meet its burden to demonstrate that the certificate of assessment contains a mistake of fact or error of law under SDCL 10-59-9. According to the Department, because the record before the hearing examiner supported the hearing examiner's fact finding that Midwest performs repairs, the circuit court clearly erred when it entered an independent fact finding that Midwest modifies railcars. We note that the circuit court did not hold an evidentiary hearing or consider witness testimony. The circuit court based its findings of fact on its view of the administrative record and on the oral and written arguments by counsel. Because we give no deference to the circuit court's review of the administrative record, we disregard the court's finding that Midwest performs *modifications* instead of *repairs.*

[¶30.]     From our independent review of the hearing examiner's proposed decision, we cannot determine whether the hearing examiner made a specific finding that Midwest performs repairs and *not* modifications. A reading of the decision suggests the hearing examiner made no distinction. In the examiner's view, this Court's holding in *Butler Machinery Co.* applied to *any* service involving a lease agreement and the use of parts or materials for lease purposes. Indeed, in ruling that Midwest could no longer rely on the 1996 Advice Letter, the hearing

examiner noted that the letter "indicated that a railcar *modified* for leased purposes is not subject to taxes[.]" (Emphasis added.)

[¶31.] We need not decide whether Midwest in fact performs modifications or repairs to CarMath and M&C Leasing railcars. The issue is whether the hearing examiner correctly held Midwest could no longer rely on the 1996 Advice Letter because of this Court's decision in *Butler Machinery Co.* This is because, in order to rule that Midwest could no longer rely on the 1996 Advice Letter, the hearing examiner had to first conclude that Midwest's service to CarMath and M&C Leasing railcars fell within the scope of the 1996 Advice Letter.[3] If *Butler Machinery Co.* did not overrule the 1996 Advice Letter, then Midwest would be entitled to continue to rely on that advice and its service to CarMath and M&C Leasing railcars would continue to be exempt from taxation.

[¶32.] In *Butler Machinery Co.*, we were asked to determine whether the parts and materials used by Butler to maintain and repair its rental fleet were subject to use tax. 2002 S.D. 134, ¶ 2, 653 N.W.2d at 759. Butler owned a rental fleet of heavy construction equipment and leased the equipment to its customers.

---

3. Under SDCL 10-59-27:

> Any taxpayer who has received written advice from the Department of Revenue concerning the taxability of transactions shall be allowed to rely on such advice when filing tax returns. . . . The department may not maintain a position against a taxpayer which is inconsistent with a prior written opinion issued to the same taxpayer unless rescinded by the department, by a change in statutory law or reported case law, by a change in federal interpretation in cases if the department's written advice was predicated upon a federal interpretation or by a change in material facts or circumstances relating to the taxpayer.

As part of the lease agreements, Butler maintained and repaired the equipment with parts and materials out of its inventory. In deciding a rental price, Butler included the expenses it anticipated it would incur to repair the equipment. *Id.* ¶ 3.

[¶33.] On appeal to this Court, Butler argued that its repair parts were not subject to tax because (1) sales tax had been paid on the gross receipts from the lease rental income (retail sale), (2) the repair parts were actually leased to customers and therefore exempt, and (3) the use of the repair parts should only be taxed once, which here was sales tax paid on the gross receipts on the income from the lease agreements. *Id.* ¶¶ 9-11. We held that use tax was due in light of "the true nature of the transaction between Butler and its customers." *Id.* ¶ 12. Under the terms of the lease agreements, the customer received from Butler both "a working piece of equipment" and "the right to use that equipment for its intended purpose for a given period of time." *Id.* With this right to use the equipment, "Butler has an obligation to keep the leased equipment in working order[.]" *Id.* ¶ 13.

[¶34.] Here, on the other hand, the leased railcars are not Midwest's rental fleet. CarMath and M&C Leasing own and lease the railcars. In fact, Auditor Palmer agreed that Midwest does not own the railcars: "Are you aware that Midwest Railcar doesn't own any railcars, it only services them? Yes." There is no evidence that Midwest entered into any agreement related to the railcars to provide a third party the right to use the railcar for its intended purpose for a given period of time or that Midwest had a continuing obligation to keep the railcars in specific working order as part of its service.

[¶35.]     *Butler Machinery Co.* did not create a bright-line rule that all parts and materials used for any lease purposes are subject to taxation. It was decided on the nature of the transaction between Butler and its customers. Because Butler's lease-agreement relationship with its customers is not akin to the relationship between Midwest and CarMath and M&C Leasing, the hearing examiner erred when it interpreted *Butler Machinery Co.* to overrule the Department's 1996 Advice Letter to Midwest. Midwest is entitled to continue to rely on the 1996 Advice Letter. And Midwest's service to CarMath and M&C Leasing railcars is not subject to taxation. The circuit court correctly ruled that Midwest is entitled to a refund of the amount of use tax overpaid on its service to CarMath and M&C Leasing railcars.[4]

### iv.   Refund Calculation

[¶36.]     The Department claims that Midwest is not entitled to a refund because the circuit court's refund calculation is not supported by the record. The circuit court did not reverse the Department's certificate of assessment in full. It ordered the Department to refund Midwest the use tax Midwest overpaid related to its service to CarMath and M&C Leasing railcars. The court then directed Midwest to prepare a proposed order consistent with the court's decision, including an award of interest under SDCL 10-59-24. The certificate of assessment had

---

4.     We need not address the circuit court's alternative ruling on the controlled group exception because of our holding that Midwest is entitled to rely on the 1996 Advice Letter.

imposed $78,255.24 in use tax and $15,790.84 in interest. Midwest's proposed order requested a refund of $63,724.43 in tax and $15,790.84 in interest.

[¶37.]     It is undisputed that Midwest erroneously requested the interest imposed based on the original assessment. To address this error, the circuit court held a telephonic hearing. During the hearing, Midwest offered to waive an award of interest. The Department argued that Midwest's actual refund request— $63,724.43—lacked evidentiary support. Midwest responded that its calculation was based on Midwest employee Kristi Saxlund's testimony before the hearing examiner. Midwest emphasized that the Department did not cross-examine Saxlund on her calculations. The Department replied that the circuit court could not rely on Saxlund's testimony because Midwest did not offer Saxlund's opinion within sixty days of the commencement of the audit. *See* SDCL 10-59-3, -7. The Department asked the circuit court to affirm the certificate of assessment in full because Midwest failed to meet its burden to prove that the certificate of assessment was incorrect under SDCL 10-59-9. Ultimately, the circuit court ordered that Midwest was entitled to recover $63,724.43 in use tax representing the amount overpaid prior to the appeal of the final decision of the Secretary.

[¶38.]     On appeal, the Department asks this Court to affirm the certificate of assessment in full because, in the Department's view, Saxlund's testimony is not substantial credible evidence sufficient to overcome the prima facie correctness of the certificate of assessment. *See* SDCL 10-59-9. The Department avers Midwest is not entitled to a refund in any respect because it failed to exhaust its administrative

remedies when it did not present evidence during the audit process specifically related to the use tax assessed on its repair to CarMath and M&C Leasing railcars.

[¶39.] We previously ruled that the Department waived its right to assert that Midwest could not rely on the evidence submitted during the administrative hearing related to its service to CarMath and M&C Leasing railcars. The Department did not file a notice of review after the Secretary affirmed the hearing examiner's decision in full. Further, based on the fact Midwest is entitled to continue to rely on the 1996 Advice Letter, the certificate of assessment is incorrect and Midwest is entitled to a refund of the use tax it overpaid related to its service to CarMath and M&C Leasing railcars. The question remains whether to remand the matter to the hearing examiner to determine the amount of use tax overpaid by Midwest for its service to CarMath and M&C Leasing railcars or to affirm the circuit court's order directing the Department to refund Midwest $63,724.43 in overpaid use tax.

[¶40.] Under SDCL 1-26-36, the circuit "court may affirm the decision of the agency or remand the case for further proceedings." The court also has the discretion to "reverse or modify the decision" of the Department. *Id.* Here, the court correctly determined that the Department improperly assessed use tax on Midwest's parts and materials used to service CarMath and M&C Leasing railcars. The court then exercised its discretion and reversed and modified the Department's May 2013 final decision. The Department does not challenge the court's discretion under SDCL 1-26-36. Nor does the Department present counter evidence related to the use tax on Midwest's service to CarMath and M&C Leasing railcars. We affirm

the circuit court's modification of the Department's May 2013 final decision and ruling that "Midwest Railcar Repair, Inc. is entitled to recover a refund of the amount overpaid pursuant to SDCL 10-59-9 prior to appeal from the Final Decision of the Secretary, representing use tax on modification and refurbishments for CarMath and M&C Leasing, which amount included $63,724.43 of use tax."

## 2. *Midwest's Service to Burlington Northern Railcars: The Source of the Sale for Sales Tax Purposes*

[¶41.]     In South Dakota, "a retailer shall source sales of tangible personal property . . . and services to the location where the tangible personal property . . . or service is received." SDCL 10-45-108. Generally, "[i]f the product is received by the purchaser at a business location of the seller, the sale is sourced to that business location." ARSD 64:06:01:63(1). "The sourcing rules in §§ 64:06:01:62 to 64:06:01:68, inclusive, apply regardless of the *characterization of a product* as tangible personal property, a product transferred electronically, or a service." ARSD 64:06:01:61 (emphasis added). "Product" is defined to include "services[.]" ARSD 64:06:01:62(2). "Receive" is defined to include "the taking possession of tangible personal property[.]" *Id.* at (1)(a). "Receive" also means "making first use of services[.]" *Id.* at (1)(b). However, "[t]he term, receive, *does not* include possession by a shipping company on behalf of the purchaser." *Id.* at (1) (emphasis added).

[¶42.]     Here, it is undisputed that Midwest provides its repair service to Burlington Northern railcars at Midwest's business location in South Dakota. It is also undisputed that Burlington Northern takes physical possession of its railcars at Midwest's business location in South Dakota. Thus, under SDCL 10-45-108 the

sale shall be sourced to South Dakota—the serviced tangible personal property (railcar) is received by the purchaser (Burlington Northern) at the business location of the seller (Midwest). *See* ARSD 64:06:01:62(1)(a).

[¶43.] Midwest, however, argues that it is immaterial that Burlington Northern takes *physical possession* of the railcar in South Dakota because Midwest provides a repair *service*, not tangible personal property. It claims that its service implicates the alternate definition of "Receive." Under ARSD 64:06:01:62(1)(b), "Receive" is defined to include "making first use of services." In Midwest's view, Burlington Northern could not make "first use" of Midwest's repair service until Burlington Northern delivered the railcar to the destination listed on the waybill or bill of lading—a location outside South Dakota. Midwest also contends that federal law prohibits Burlington Northern from putting the railcar to use until it is inspected for safety, which happens at a location outside South Dakota. Midwest relies on "The Rules and Procedures of Streamlined Sales Tax Governing Board, Inc.," which is a document the Department has used to provide guidance for sourcing determinations.

[¶44.] Whether a statute or regulation imposes a tax under a given factual situation is a question of law; we give no deference to the circuit court or agency's interpretation. *TRM ATM Corp. v. S.D. Dep't of Revenue & Regulation*, 2010 S.D. 90, ¶ 3, 793 N.W.2d 1, 3. The same rules of construction apply to our review of administrative regulations. *First Gold, Inc. v. S.D. Dep't of Revenue & Regulation*, 2014 S.D. 91, ¶ 6, 857 N.W.2d 601, 603-04. We construe the statute or regulation liberally in favor of the taxpayer. *Id.* at 604. Yet, we give the words in the statute

or administrative rule "a reasonable, natural, and practical meaning to effectuate the purpose of the statute." *Robinson & Muenster Assocs. v. S.D. Dep't of Revenue*, 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612.

[¶45.]     In full, ARSD 64:06:01:62 provides:

Terms used in §§ 64:06:01:61 to 64:06:01:65, inclusive, mean:

(1) "Receive,"

(a) the taking possession of tangible personal property;

(b) making first use of services; or

(c) taking possession of or making first use of any product transferred electronically, whichever comes first.

The term, receive, does not include possession by a shipping company on behalf of the purchaser;

(2) "Product," any tangible personal property, any product transferred electronically, including software delivered electronically, or services, whether sold, leased, or rented.

The plain language of this regulation does not support Midwest's view that its service to Burlington Northern railcars cannot implicate either definition of "Receive" under ARSD 64:06:01:62(1). On the contrary, the rule uses the word "or" and provides alternate meanings of "Receive." If Burlington Northern *either* "takes possession of tangible personal property" in South Dakota *or* is "making first use of services" in South Dakota, receipt occurs in South Dakota. It cannot be disputed that Burlington Northern took possession of the railcar (tangible personal property) in South Dakota. Moreover, the product here is not merely a service; it is a service to a railcar—tangible personal property. Under the unambiguous language of ARSD 64:06:01:62(1), Burlington Northern receives the serviced railcar at Midwest's business location in South Dakota.

[¶46.]       Nonetheless, Midwest contends that even if we conclude that Burlington Northern *receives* the railcar in South Dakota, the exclusion to the definition of "Receive" applies.  That exclusion provides: "The term, receive, does not include possession by a shipping company on behalf of the purchaser[.]"  *Id.* According to Midwest, when Burlington Northern picks up the railcar in South Dakota, it possesses the railcar as a shipping company and as the purchaser.  It then directs this Court to *Wyoming Department of Revenue*, 67 P.3d 1176, *Standard Oil Co.*, 147 P.2d 577, and *H-R Truck & Equipment Co.*, 333 P.2d 151, for the proposition that a common carrier can act as both the shipping company and buyer when the destination for the repaired railcar is out of state.

[¶47.]       The Department responds that the plain language of ARSD 64:06:01:62(1) does not support the interpretation that Burlington Northern can be both the shipping company and purchaser.  In the Department's view, "on behalf of" contemplates one person doing something for someone else.  The Department argues that the cases relied on by Midwest are irrelevant in light of South Dakota's different tax structure.

[¶48.]       From our review of the plain language of ARSD 64:06:01:62(1), Burlington Northern cannot be both the shipping company and the purchaser.  The language unambiguously contemplates a contract between two parties—a shipping company and a purchaser.  Black's Law Dictionary defines a "shipper" as 1. "Someone who ships goods to another. 2. Someone who contracts with a carrier for the transportation of cargo."  *Shipper*, Black's Law Dictionary (10th ed. 2014).  When used as a "legal term of art, the shipper may not be the person who owns the

cargo, but an agent or an independent contractor[.]" *Id.* Therefore, Burlington Northern cannot be in *physical* possession of its railcar while simultaneously possessing the railcar *on behalf of* itself. To conclude otherwise would require a strained and unreasonable interpretation of the regulatory language. *See Citibank, N.A. v. S.D. Dep't of Revenue*, 2015 SD 67, ¶ 12, 868 N.W.2d 381, 387; *Border States Paving, Inc. v. S.D. Dep't of Revenue*, 437 N.W.2d 872, 877 (S.D. 1989) (Wuest, C.J., dissenting) (we do not attempt a strained or forced construction when the language is clear on its face).

[¶49.]     Also, nothing in *Wyoming Department of Revenue*, 67 P.3d 1176, *Standard Oil Co.*, 147 P.2d 577, or *H-R Truck & Equipment Co.*, 333 P.2d 151, compels a different conclusion. Unlike South Dakota's sourcing law, Wyoming law specifically considers the "intent of the vendor" to transfer title of the product to the purchaser out of state. *Wyoming Dep't of Revenue*, 67 P.3d at 1185-86. Similarly, the intent of the common carrier that delivery not take place until the product reaches its out-of-state destination was relevant in *Standard Oil Co.*, 147 P.2d at 580 and *H-R Truck & Equipment Co.*, 333 P.2d at 153. Because Burlington Northern received the repaired railcars in South Dakota, the hearing examiner properly sourced the sale to South Dakota and imposed tax under SDCL 10-45-108.

## Conclusion

[¶50.]     We affirm the circuit court's conclusion that *Butler Machinery Co.* did not override the 1996 Advice Letter. Because Midwest is entitled to continue to rely on the advice, we need not consider whether Midwest's service is exempt from taxation under the controlled group exemption and exemption-related regulations.

We affirm the court's order that "Midwest Railcar Repair, Inc. is entitled to recover a refund of the amount overpaid pursuant to SDCL 10-59-9 prior to appeal from the Final Decision of the Secretary, representing use tax on modifications and refurbishments for CarMath and M&C Leasing, which amount included $63,724.43 of use tax." And we affirm the court's ruling that Midwest is entitled to "interest on these refund amounts, under SDCL 10-59-24, the amount of which interest shall be calculated and depend upon the date it is ultimately refunded[.]" But we reverse the circuit court's order that Midwest "is entitled to recover refunds of all of its overpayments of sales tax on out-of-state repair services for the Burlington Northern" during and after the audit period.

[¶51.] Affirmed in part and reversed in part.

[¶52.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.